CITY OF NEWPORT *vs.* NEWPORT WATER CORPORATION *et al.*

JANUARY 29, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CONDON, J. The City of Newport, a municipal corpora-
of this State, pursuant to the authority specially conferred
upon it by Public Laws, 1933, Chapter 2072, as amended
by Public Laws, 1934, Chapter 2162, filed in the Superior
Court its petition or certificate of condemnation of all the
property of the Newport Water Corporation situated in
that city and in the towns of Middletown, Portsmouth,
Tiverton and Little Compton. In this petition or certifi-
cate, the water corporation and the Newport National
Bank, as trustee for the benefit of bondholders of said
water corporation, were named as parties respondent.

The respondents entered their appearance in the Supe-
rior Court, and a hearing was held in April, 1936, before a
justice of that court, to afford them an opportunity to
show cause, if any they had, why the property described
in the petition or certificate should not be taken by the
city in accordance with the grant of power given to it by
said Chap. 2072 as amended. The respondents did not
deny the constitutionality or otherwise attack the validity

of that statute, but contended that the public necessity for the taking of its property must be determined by the Superior Court before the taking could be declared, and before commissioners could properly be appointed to assess the damages for the taking.

The petitioner contended *contra* that the Superior Court was without jurisdiction to determine the question of public necessity, as this was a legislative function. After presenting to that court certified copies of the special act, and also of resolutions of the representative council of the city, passed pursuant thereto and directing the mayor and board of aldermen of the city to institute the appropriate proceedings to condemn the property of said respondent, counsel for the petitioner stated to the court: "That, I think would be our case except for the fact that the members of the Board of Aldermen have been informed by counsel for the respondent that if this Court should decide it was necessary, why they propose to take it to the Supreme Court and therefore, for the purpose of the record, we wish to introduce certain testimony." At this point the trial justice interjected: "That is on the issue of public necessity of section 5?" To which question counsel for the water corporation volunteered the response: "I think that is the only issue before the Court, if Your Honor please."

Following this exchange of remarks, the cause proceeded to the presentation of oral testimony, more or less of a technical and expert character, as to the adequacy of the water supply maintained and made available by the water corporation, and also as to the potability of the water supplied to its users. The apparent purpose of this evidence was to enable the trial justice to determine whether or not there was a necessity for the city to take over the service of supplying water to its inhabitants. From our examination of the transcript it appears to us that this question was uppermost in the minds of the respondents and the trial justice and "for the purpose of the record" the petitioner seems to have acquiesced. Inasmuch as the

decision of the trial justice was in favor of the petitioner, it did not pursue its objections to this view until the cause came here, whereupon it promptly renewed such objections by motions to quash and dismiss the several appellate proceedings brought in this court by the respondents.

The trial justice took the matter under advisement at the conclusion of the hearing on April 9, 1936, and on June 2, 1936, in a carefully considered rescript, he held that under Sec. 5, Chap. 179, G. L. 1923, the Superior Court was authorized to determine the public necessity for the taking of the property of the respondents. He further found on the evidence that such a public necessity existed for the taking of the property of the respondents by the City of Newport. In accordance with this decision certain decrees were duly entered in the Superior Court on June 9, 1936, one confirming the decision and one appointing commissioners to assess damages for the taking of the respondents' property.

The respondents being in doubt as to whether the nature of the proceeding was at law or in equity, and as to what was the correct method of procedure to bring the cause to this court for review, none being specified in the statute, they have prosecuted their bill of exceptions as if the proceeding were an action at law. They have also brought their appeal from the decrees entered below according to the course of equity, and in addition have filed in this court their petition for a writ of *certiorari* directed to the Superior Court. All these proceedings raised substantially the same issues.

The trial justice seems to have considered the cause before him as a proceeding in equity, although he expressly refused to rule whether or not it was an action at law. Apparently for this reason, and also because the clerk of the Superior Court for Newport county indexed the proceeding on the equity docket, the respondents brought their appeal to this court as in equity. The petitioner moved in this court to dismiss the appeal on the ground

that the cause was a proceeding at law and not a cause in equity.

The appeal must be dismissed. There is no warrant for considering a condemnation proceeding as a suit in equity or for holding that it should follow the course of equity. On the contrary, the practice has been in this State to treat such a proceeding as one at law. *In re Rhode Island Suburban Ry. Co.,* 22 R. I. 457; *In re State House Commissioners,* 19 R. I. 382. But while it is a proceeding at law it is not an action at law. It has been properly said to be *sui generis,* and in the absence of prescribed rules of procedure, it is governed by rules of practice as in courts of law assimilated in many respects to practice prevailing in equity. 20 C. J. 873, 874. In other words, although it is neither an action at law nor a cause in equity, it is a proceeding at law which adopts the procedure of the law court as the natural and normal mode for it, and as occasion dictates, it utilizes suitable forms borrowed from courts of equity. In whatever aspect the proceeding is viewed in the Superior Court, when brought to this court for review, if it can be reviewed at all, the better practice is to treat it as akin to an action at law, and bring it here in the manner in which such actions are brought, namely, by bill of exceptions.

This brings us to the consideration of the respondents' bill of exceptions and its petition for *certiorari.* Both are predicated upon the respondents' contentions (1) that the Superior Court is vested with the authority to determine whether or not there is a public necessity for the City of Newport to take over and operate the property of the Newport Water Corporation for the identical purpose for which the corporation is now using said property, and (2) that there is a right of appeal from the decision of the Superior Court on this question to this court notwithstanding the fact that no such right is declared in Chap. 179, G. L. 1923, prescribing the procedure in condemnation proceedings substantially similar to those before us. The soundness of these contentions depends entirely upon what

construction is placed upon the enabling act, P. L. 1933, Chap. 2072, as amended, and more particularly upon what is intended by the words "public necessity" in Sec. 5, Chap. 179, G. L. 1923.

We shall now proceed to a consideration of these statutes. But before we do this it may be well to make a few observations on some general principles of the law of eminent domain.

The power to condemn inheres in sovereignty. It is not derived from any constitutional grant, but its exercise may be limited by the constitution. In the absence of any constitutional limitation it is exclusively a legislative power. *Eastern R. R. Co.* v. *B. & M. R. R.*, 111 Mass. 125; *State* v. *McCook,* 109 Conn. 621, 147 A. 126; *Joslin Mfg. Co.* v. *City of Providence,* 262 U. S. 668; *Joslin Mfg. Co.* v. *Clarke,* 41 R. I. 350. The only such limitation on the exercise of this power by our general assembly is that private property may be taken only for public uses, and by payment of just compensation. Rhode Island Constitution, Art. I, Sec. 16. *Talbot* v. *Talbot,* 14 R. I. 57; *In re Rhode Island Suburban Co.,* 22 R. I. 455. It is settled in this State that what constitutes a public use is a judicial question. *In re Rhode Island Suburban Co., supra,* and *Joslin Mfg. Co.* v. *City of Providence, supra.* But it has been held that: "'The presumption is that the use is public if the legislature has declared it to be such, and the decision of the legislature must be treated with the consideration due to a co-ordinate department of the government of the state.' If an act is obviously invalid the courts will so declare, and, by necessity, courts must determine whether the legislature could reasonably consider the use to which the property is to be devoted a public use; otherwise a legislative declaration that a use is public when it is obviously private would conclude the question of the constitutionality of the act." *Narragansett Electric Lighting Co.* v. *Sabre,* 50 R. I. 288, 298.

The necessity and expediency of the taking, as distinguished from the nature of the use to which the property

taken is to be devoted, is purely a legislative question with which the courts have nothing to do. If it is admitted that the use for which the property is taken is public, there is nothing left for judicial determination. *Joslin Mfg. Co.* v. *Clarke, supra,* and *Joslin Mfg. Co.* v. *City of Providence, supra.*

This legislative power is one which may be delegated, and indeed the most practicable manner in which it may be exercised is by delegation. Thus it has been frequently delegated to municipal corporations as well as to private corporations performing a public service. It has likewise been delegated to legislative commissions especially constituted for the purpose of acquiring private property for some particular public use designated in the legislative act, even though such commission was not, itself, to take possession of the property or pay compensation for the same, but was to act as the agent for the State and some of its municipalities or for several railroad corporations by whom compensation was to be paid for the taking. *East Shore Land Co.* v. *Peckham,* 33 R. I. 541; *In re Pawtucket & Central Falls Grade Crossing Commission,* 36 R. I. 200. It is no longer open to question in the United States Supreme Court or in this court that the legislature may confer upon a municipality the authority to determine for itself the necessity and extent of the taking of the property. The municipality may decide this question *ex parte* without a hearing and without appeal from its decision to an impartial tribunal. *Bragg* v. *Weaver,* 251 U. S. 57. It has been declared in plain and positive language, not open to any possible misconstruction or doubt, that: "The question is purely political, does not require a hearing, and is not the subject of judicial inquiry." *Joslin Mfg. Co.* v. *City of Providence, supra,* at page 678, and see also *Joslin Mfg. Co.* v. *Clarke, supra,* at page 359.

Another principle as well settled as those above discussed is that the legislature, in the absence of constitutional limitations to the contrary, has the right to take, from one,

property already devoted to a public use and to give it to another to be devoted to the same identical public use. *Eastern R. R. Co.* v. *B. & M. R. R. Co., supra.* The necessity and expediency of such a transfer are matters of legislative policy with which the courts have nothing to do. Where the legislature clearly designates the property to be taken, it is conclusive, as such exercise of power is political. *State* v. *McCook, supra.*

The final principle that we may mention is that the property may not be taken without the payment of or securing the payment of just compensation. This protection is expressly guaranteed in our State and federal constitutions, and what is just compensation for the taking is a judicial question solely. 10 R. C. L. 15. This principle is so well settled that seldom, if ever, does any question arise now over the exclusive right of the judicial department to determine it, but there does arise under this head a related question as to whether the act authorizing the taking has suitably secured the payment of compensation. On this point it has been definitely settled that where the taking is by or for the benefit of the State, or one of its municipal corporations, it is not essential that payment should first be made before taking by condemnation, if an adequate and certain remedy for payment is provided against the State or municipality. *East Shore Land Co.* v. *Peckham, supra; Joslin Mfg. Co.* v. *City of Providence, supra.* See also 2 Lewis, Eminent Domain, (3rd ed.), 679; 10 R. C. L. 125.

In the light of these well-established principles, what is the situation presented by the instant case? The City of Newport desires to own and operate a municipal water supply system and maintain for its inhabitants an adequate and healthful water supply. There is already operating, within its corporate limits and performing this public service, a private corporation, the respondent Newport Water Corporation. We assume from the record that the city, or some of the inhabitants thereof, made this desire

known to the general assembly. In any event, that body, in the exercise of its sovereign power, enacted Chap. 2072, later amended by Chap. 2162, authorizing the city to take all or part of the property of the water corporation, and to operate the same as a water supply system. There can be no question of the right of the legislature to delegate this power to the city and as to this we understand the respondents do not contend to the contrary. They urge rather that the acts conferring the power, by the language used therein, plainly require that the Superior Court shall decide whether or not there is a necessity for the city to exercise the power granted to it. In other words, they contend that, while the general assembly has conferred upon the city the power of condemnation over any or all of their property, the city cannot exercise this power until the Superior Court finds that there is a public necessity for its exercise.

In support of this contention respondents rely upon the language of Sec. 5, Chap. 179, G. L. 1923, which in part reads as follows: "Sec. 5. At the time mentioned in the notice given under the authority of the preceding section, or at such adjournment from the said time as the said court shall order, the court, after hearing the parties in interest therein who may desire to be heard, *shall first adjudge whether the taking of the property, estate or rights in question is a public necessity,* and, if that be adjudged affirmatively, the property and rights of property shall from that time be deemed to have been taken . . ." (Italics ours.)

Chapter 179 is a general statute authorizing towns, but not cities, to "take, condemn, hold, use and permanently appropriate any land, water, rights of water and of way, *necessary and proper to be used in furnishing or enlarging any such water-supply,* including sites and materials for dams, reservoirs, pumping-stations, and for coal-houses, with right of way thereto, and right of way for water-pipes along and across public highways, and through private lands, and including also lands covered or to be flowed by

water, or to be in any other way used in furnishing, enlarging or maintaining any such water-supply." (Sec. 1.) (Italics ours.) The latter clause which we have italicized has an important bearing on the true construction to be given to the particular portion of Sec. 5 upon which the respondents rely. Before proceeding to construe these clauses it should be remarked here that said Chap. 179, while it does not apply to cities, is made applicable to some extent here by virtue of Section 1, Chap. 2072, as amended by Chap. 2162, which reads as follows: "Section 1. Section 1 of chapter 2072 of the public laws of 1933, entitled, 'An act authorizing the city of Newport to acquire the property of Newport Water Corporation and Newport Water Works', is hereby amended to read as follows:

" 'Section 1. The city of Newport is hereby authorized and empowered to acquire by purchase or by condemnation in substantial compliance with the provisions of Chapter 179 of the general laws, all or any part of the property of Newport Water Corporation and/or Newport Water Works in said city and in the towns of Middletown, Portsmouth, Tiverton and Little Compton, including the right to acquire the property of whatever nature, kind or description of any other person or corporate body now or hereafter used in connection with the storage and distribution of water in said city and/or towns, and to operate the same as a water supply system and said city is hereby given all the powers necessary or proper to carry out the aforesaid grant.' "

It is apparent that the legislature intended by this language to require the city to follow the procedure set out in Chap. 179 when it exercised the authority granted to it under Chap. 2072. This is what the city appears to have done. In substantial compliance with the procedural provisions of Chap. 179 it has taken all the property of the water corporation, exclusive of bills receivable, and is prepared to proceed further under said chapter to the assessment of damages for the taking. The respondents object

to proceeding further until the question of the public necessity of the taking, as they understand it, is decided by this court.

We do not agree with the respondents' construction of Sec. 5, Chap. 179. The public necessity, there mentioned, means that the property taken, which the town is authorized to condemn, must be necessary to the public use. This is made perfectly clear by reading, in connection with this section, the clause in Section 1 which we italicized and to which we called particular attention above. It is the property condemned that must be first affirmatively adjudged "necessary and proper to be used" for furnishing the water supply. The necessity of the public use itself is not open to question. Whether it is necessary to have a public water works is decided, under the act, by the electors and not by the court. But whether or not any particular property to be condemned is "necessary and proper" for the public use is a question for the court under Sec. 5 of the act. In the instant case, that question was not raised in the Superior Court, probably due to the fact that all the property taken by the city was property which the water corporation admittedly had already devoted to a necessary public use, namely, the furnishing of a water supply.

The Superior Court was in error when it held that the question of public necessity, as understood by the respondents, was before it for determination, but, inasmuch as its findings were in favor of the city on that issue, no harm was done. Respondents' objections to these findings on this question, of course, cannot furnish any basis for review here on bill of exception. It is clear to us that the hearing in the Superior Court was confined to the consideration of a question which had already been determined by the legislature and the representative council of the City of Newport, and concerning which the Superior Court was without jurisdiction.

With this question disposed of it would seem that there is nothing left of the respondents' case which would require further consideration by us. The respondents have raised in this court, however, certain questions which they assert are jurisdictional and, therefore, proper for us to consider, notwithstanding that such questions were not brought to the attention of the Superior Court nor included specifically in the bill of exceptions. They contend that the representative council of the city attempted to delegate to the mayor and board of aldermen the power vested in the council to condemn the property of the water corporation. They also contend that the petition and certificate filed in the Superior Court by the mayor and board of aldermen on behalf of the city is a nullity as it does not, as it should, make the city the petitioner.

The short answer to these contentions is that the representative council was by Sections 1 and 2, Chap. 2072, as amended, vested with plenary power to exercise all the powers granted to the city "necessary or proper to carry out the aforesaid grant" and "to that end may pass such ordinances and set up such agencies as it deems necessary." We think the council was given a wide latitude here as to the manner in which it should provide for the necessary steps to be taken under Chap. 179 to condemn the property of the water corporation. It could have undertaken to do all the work itself or it could have entrusted the administrative details to others. It chose to order the executive officers of the city to perform the administrative duties necessary to comply substantially with the provisions of Chap. 179, G. L. 1923, and by resolution formally read and passed at a meeting held on December 3, 1935, it *directed* the mayor and board of aldermen to institute condemnation proceedings for the purpose of acquiring all or any part of the property of the Newport Water Corporation.

This is not a delegation by the council of the power which it had received from the legislature. It was nothing

more than the selection of administrative agents directed to take certain necessary steps to make effective the action which the council had taken in the exercise of the power delegated to it by the legislature. That was the power to take over and operate the property of the Newport Water Corporation as a municipally owned water supply system for the City of Newport. When the council, by its resolution of December 3, 1935, directed the mayor and board of aldermen to institute condemnation proceedings, it fully exercised its delegated power. There was nothing left of that power for the mayor and the board of aldermen to exercise. They could not decide whether or not the city should operate a water supply system. That was the decision of the council. They could not decide to take other property than that of the Newport Water Corporation for the water supply system. That had already been decided for them by the council. Their appointment vested in them no discretion as to such matters. The legislative act vested such discretion in the council, and the council exercised it.

But the respondents argue that because the resolution, appointing the mayor and the board of aldermen, authorized those officials to take all or any part of the property of the water corporation, at least a portion of the council's power was thereby delegated. Their argument appears to be that in vesting this limited discretion to its agents, the council has delegated some part of its power, however small it may be, and that the whole resolution is invalid. With this argument we do not agree, but even if there were merit in it we think it would not avail the respondents under the circumstances of this case. As pointed out by the city, the mayor and board of aldermen have not attempted to exercise any discretion in the taking of the property of the water corporation. They have taken all of its property. Under the council's resolution they were authorized to do this, and the legislative act authorized the council to take all the property. It appears then that

the agents of the council have obeyed the command of the resolution appointing them, even if we consider invalid that part of the resolution which vested in them a discretion to take only a part of the property of the water corporation. If the resolution is valid with the discretionary feature of it eliminated, and we think it is, then the action of the mayor and the board of aldermen is valid.

Some question has been raised as to the effect of a certain referendum to the people of Newport on this question of taking the property of the Newport Water Corporation for a municipal water system, and whether the council really exercised the power granted to it. We think the council, notwithstanding that referendum, actually exercised the power delegated to it. It may be well, however, to consider briefly this, referendum.

On May 18, 1935, the council submitted to the qualified electors of Newport the question whether the city should condemn the property of the Newport Water Corporation for the purpose of operating a publicly-owned water supply. This question was answered in the affirmative by a vote of "Yes", 5,139; "No", 335. When asked on the argument why this referendum was held, counsel for the city answered that it was merely advisory for the purpose of assisting the council in its determination of the question of exercising the power delegated to it under the legislative act. Whether or not this was the real reason for it, the referendum could serve no other purpose. The council was not bound by it. It could follow or refuse to follow the choice expressed by the electors according to its judgment in the matter as it, and it alone, was authorized to exercise this authority on behalf of the city. It chose to follow the will of the electors. Its resolution of December 3, 1935, directing the mayor and board of aldermen to institute condemnation proceedings, was the formal expression of this choice and it must be accepted by us as the free choice of the council, regardless of the referendum to the electors.

The respondents make objection to this referendum because the proposition submitted for their approval or rejection did not afford the electors an opportunity to vote on the question of acquiring the property of the water corporation by purchase as well as by condemnation. On the view which we have taken of this referendum this objection is of no consequence. Under Chap. 179, Section 1, it is the electors qualified to vote in town meeting who decide the question whether the town shall provide a water supply, but compliance with this requirement was not intended in the instant case for two reasons, either one of which is sufficient. First, because compliance was impossible in a city which does not transact its financial affairs in town meeting with only tax-paying electors qualified to vote therein, and second, because the legislature in Chap. 2072, as amended, explicitly declared in language free from any doubt or ambiguity that the representative council was authorized to exercise this power. The referendum not being a necessary step in the exercise of this power by the council, the respondents' objections to the referendum are without merit.

The other contention of the respondents, that the mayor and the board of aldermen are the petitioners in this case and not the City of Newport, we deem to be also without merit. The petition, it is true, begins with the opening declaration: "Respectfully represents Henry S. Wheeler, Mayor, and William A. Hanley, John Mahan, J. Raymond Casey and Edward A. Martin, Aldermen, that they are the Mayor and the Board of Aldermen, respectively, and bring this their petition for and in behalf of the City of Newport, a municipal corporation, and upon information and belief, allege: . . ." But it is entitled: *"The City of Newport v. Newport Water Corporation et al."* and in the certificate clause it refers only to the petitioner in the singular, as follows: "Wherefore this petitioner, the said City of Newport, hereby certifies," *etc.* In the conclusion also the prayer is: "Now, Therefore the said City of Newport

prays that notice," *etc.* And the petition is signed: "The City of Newport, by Henry S. Wheeler, Mayor," and then follows the signatures of the members of the board of aldermen. We, therefore, find that this petition is in fact brought by the City of Newport and that the defect in the commencement, if it in fact is a defect, is merely formal and was waived by the respondents by not ojecting thereto in the Superior Court. There can be no doubt that this proceeding is taken by the city. The resolution of the representative council shows this conclusively, and hence no harm can come to the respondents on the ground that the city might later repudiate these proceedings as not having been brought by it, but by the mayor and the board of aldermen as individuals, merely described in the petition as officers of the city.

For the above reasons, the rule laid down in the case of *Town of East Greenwich* v. *Guenond,* 32 R. I. 224, cited by the respondents, does not apply in the instant case. It may also be noted here that one of the grounds of objection to the proceedings in the cited case, which the court held valid, was that John H. Murray, town sergeant of the town of East Greenwich, who brought the complaint on behalf of that town, was never authorized to do so. It is also significant that the complaint was signed "John H. Murray, Town Sergeant of the Town of East Greenwich", whereas in the instant case the petition, as stated above, is signed "City of Newport, by Henry S. Wheeler, Mayor", and then follow the signatures of the several members of the board of aldermen. A further analysis of the cited case discloses several other particulars in which it differs radically from the instant case, but we need not consider them here.

We have not considered the question whether or not there is a right of review in this court of the decision of the trial justice in the Superior Court on the question of the public necessity of the taking under Sec. 5, Chap. 179, because, in the instant case, the trial justice did not decide

that question, as we have construed the statute, but attempted to pass upon another question which was purely legislative and not within judicial cognizance. As we have said, the truly judicial question of whether the property taken was necessary and proper to the public use was not raised and therefore the trial justice had nothing to pass upon. Hence, there is no occasion for raising the question which the respondents have raised here as to the right of review in a proper case, and we do not decide it. That question may be left for determination at some future time when it may arise squarely on a finding by the Superior Court of "public necessity" under the act as we have here construed it.

In view of what we have said in the above discussion of the chief contentions of the respondents, it will not be necessary to consider several other minor points made by them, as they necessarily fall with those here considered. We repeat that we have not considered at all the questions raised concerning the findings of the trial justice to the effect that there is a public necessity for the City of Newport to take over the water supply and water works of the water corporation, as we have held that it was not within his province to decide that precise question. Inasmuch as his decision is favorable to the city, and as the result reached by him is the same to which we have come, though for different reasons, his findings will not be disturbed.

For the reasons above set forth, the respondents' appeal and their bill of exceptions are dismissed. Their petition for a writ of certiorari, M. P. No. 641, is denied and dismissed, and the writ heretofore issued is quashed. The case is remitted to the Superior Court for further proceedings.

Jeremiah A. Sullivan, City Solicitor, Clark Burdick, Edward J. Corcoran, for City of Newport.

Marshall Swan, Charles E. Tilley, Eugene J. Phillips, Swan, Keeney & Smith, for Newport Water Corp.

Cornelius C. Moore, for Newport National Bank, Trustee.