RUTH INEZ BRUCE *et al. vs.* STATE OF RHODE ISLAND, DEPARTMENT OF PUBLIC WORKS, DIVISION OF ROADS AND BRIDGES.

JANUARY 11, 1962.

PRESENT: Condon, C. J., Roberts and Paolino, JJ.

CONDON, C. J. This is a petition for assessment of damages for the taking by the state of 30.87 acres of the petitioner's land for highway purposes. A jury in the superior court assessed the damages at $14,625. The petitioner Ruth Inez Bruce was dissatisfied with their verdict and attributed its inadequacy to certain allegedly erroneous rulings of the trial justice excluding evidence of sales of similar land in the area and also to certain allegedly prejudicial statements made by him to or in the presence of the jury. The cause is here on her bill of exceptions to such rulings and statements.

It appears from the evidence that in 1953 the state constructed a new highway known as the Robert F. Rodman Highway in Washington County. It ran through an unimproved tract of 237.5 acres in which petitioner had an estate in remainder. The other petitioners, Myra A. Thomas and M. A. Gammino Construction Company, have received compensation for their interests and are not concerned with this appeal. The former had reserved a freehold estate for her life in the land in question and the latter, by assignment, had a lease to take sand and gravel therefrom.

The portion of the tract taken by the state was condemned April 17, 1953. On July 9, 1956 after the highway had been constructed petitioner sold a parcel of 50 acres immediately adjacent to the easterly boundary of the highway and extending alongside of it 5,600 feet to The Narragansett Electric Company, a public utility. The petitioner called the agent of the utility who negotiated the purchase to testify as to the similarity of that parcel to the parcel taken by the state and also as to the price paid by the utility. The trial justice excluded any testimony as to the price substantially on the grounds that, since the utility had the power to condemn, the sale was not a free and voluntary sale and also because he felt that public utilities do not

"care too much about how they spend as long as the expenditure can go into the capital structure."

The witness was allowed to testify as to whether the parcel purchased by the utility was comparable to the parcel taken by the state. He testified that a part of it "probably would be"; that "it was partly comparable"; and that the price paid was fair *for the purpose for which the utility bought it*. But in his direct examination he admitted that he was "not familiar with the condition of that land that was taken prior to the construction of the highway."

Such testimony, the state argues, shows that the two parcels were not comparable and therefore the trial justice's ruling was supportable on that ground. The state also argues that the construction of the highway greatly enhanced the value of the parcel which was sold to the utility in 1956 and that such enhancement deprived it of any comparability it might have had in 1953 to the parcel taken by the state. The petitioner disputes the latter argument by urging that there is no evidence in the record of any enhancement in value resulting from the construction of the highway. And, she argues, in any event both contentions as to lack of comparability came too late since the trial justice did not base his ruling on that ground. She further contends that the grounds on which he relied are clearly erroneous.

Although there is merit in such contention it does not necessarily render the ruling erroneous. We agree with the view that the mere fact that one of the parties to a sale had the power to condemn does not of itself make the sale compulsory, at least where there had been no step taken to exercise such power before the sale was negotiated. *O'Malley* v. *Commonwealth*, 182 Mass. 196; 5 Nichols, Eminent Domain §21.33 (3d ed.); 18 Am. Jur., Eminent Domain, §352, p. 996.

In the case at bar there is no evidence that the utility had taken any step in exercise of the power to condemn nor does it appear that the sale in question was in anticipation of condemnation proceedings. In so far as the trial justice rested his ruling on the utility's power to condemn, we do not think he was on sound ground nor do we subscribe to his view that public utilities are generally careless about such expenditures as they may capitalize. Whatever the fact may be in this regard in any particular case it cannot be assumed as a matter of law and used as a basis for excluding testimony of an otherwise free and voluntary sale to the utility.

However, the invalidity of the grounds upon which the proffered testimony was excluded does not render such ruling erroneous if there was in fact a valid ground upon which it could be based. *Massart* v. *Narragansett Electric Co.*, 54 R. I. 154; *Williams* v. *Rhode Island Hospital Trust Co.*, 88 R. I. 23. In our opinion the state's contentions hereinbefore stated furnish such ground. We think it is self-evident that the construction of the new modern highway must have increased measurably the value of the area through which it was laid. If before the highway was constructed the two parcels in question here were comparable they were no longer so after the highway was completed. And hence the sale of the 50 acres to the utility in 1956 was not a sale of land comparable to the 30.87 acres taken by the state in 1953. Consequently while the trial justice did not give a valid reason for his ruling the ruling itself was nevertheless correct for the reason above stated. The petitioner's exceptions upon which this point is based are accordingly overruled.

Her second point is based upon several exceptions to exclusion of testimony as to the sale price paid by the state for two allegedly comparable parcels of land bordering on the condemned parcel. After the testimony was excluded petitioner was allowed to make an offer of proof. According

to such offer the sale in each instance was made after the state had filed its certificate of condemnation. It also appeared that the seller accepted the state's first offer to purchase. The trial justice excluded the testimony as to the sale price in each instance because the state's power to condemn prevented each sale from being deemed a free and voluntary sale. The petitioner contends this was error substantially for the same reasons she relied on in support of the preceding point. The state argues that the land involved in neither sale was comparable to the condemned parcel and that the rulings were properly sustainable on that basis.

On our view of the law and the evidence the rulings were correct because in each instance the sale was made after there was a taking by the state under its power to condemn. A sale in such circumstances is deemed to be not entirely voluntary for the reason that there is an element of compulsion in the exercise of such power. *Howard* v. *City of Providence*, 6 R. I. 514. It is also in the nature of a compromise. 2 Lewis, Eminent Domain, §667 (3d ed.). It is generally held that such a sale is not deemed voluntary and that evidence of the price paid by a condemner is inadmissible. *Lynn* v. *City of Omaha*, 153 Neb. 193.

This view was long ago adopted in Massachusetts. *Cobb* v. *City of Boston*, 112 Mass. 181, 183. It was there stated: "A price so fixed by compromise, when there can be no other purchaser, and the seller has no option to refuse to sell, and can only elect between the acceptance of the price offered and the delay, uncertainty, and trouble of legal proceedings for an assessment, is not a reasonable or fair test of market value. It is in no sense a sale in the market." That case has been frequently cited with approval. See *Sawyer* v. *City of Boston*, 144 Mass. 470, *Wright* v. *Commonwealth*, 286 Mass. 371, *O'Malley* v. *Commonwealth*, 182 Mass. 196, and *Amory* v. *Commonwealth*, 321 Mass. 240.

While in *O'Malley* the court declined to hold that the trial justice erred in admitting evidence of the sale, it expressly stated: "If the judge had been of opinion that, as was found in *Cobb* v. *Boston,* 112 Mass. 181, 183, the evidence related rather to a settlement of damages occasioned by a taking than a sale, and had excluded the evidence on that ground, very likely we could not have said that he was wrong."

In the case at bar petitioner stated in her offer of proof that a certificate of condemnation had been filed by the state before each offer to purchase was made. This was a taking by the state and the sales thereafter made were clearly within the scope of the language quoted above from the *Cobb* case. The rulings excluding evidence of the price of each sale were correct. The petitioner's exceptions are therefore overruled.

The petitioner's third point is based upon exceptions to rulings excluding testimony as to the value of the gravel in the condemned parcel. She takes nothing by these exceptions. From our examination of the transcript it appears to us that the trial justice repeatedly indicated to counsel for petitioner how he should interrogate the witness to elicit his expert opinion of the market value of the land as adapted to a gravel operation but counsel nevertheless persisted in attempting to obtain from the witness his opinion of the value of the gravel independently.

The law in this state is well settled on this question and there is therefore no necessity for us to consider outside authority. In *Hervey* v. *City of Providence,* 47 R. I. 378, it was held that evidence of the value of buildings on the land separate from the market value of the land itself was not admissible. "Market value," the court said, "is the value of the land and buildings as a unit." So here, evidence of the value of the gravel, whatever it might be, could not be received as a separate item to prove market value of the land taken. To paraphrase the language of *Greene* v.

*State Board of Public Roads,* 50 R. I. 489, 492, the proper inquiry is not the value of the gravel but what is the market value of the land considering its adaptation as a gravel operation. The exceptions on which the petitioner bases this point are overruled.

The last point which petitioner has briefed is that the trial justice's interference with her presentation of the case constituted reversible error. Under this point she argues that he confused the jury by making erroneous statements during the trial regarding evidence previously admitted, and that on other occasions he otherwise interfered with or unduly restricted petitioner's cross-examination of respondent's witnesses. She has not specified the particular exceptions on which she relies to bring these matters to our attention for review. In the circumstances an undue burden is placed upon the court to search the transcript and ascertain whether an exception was taken to a ruling that reasonably relates to the contentions she now urges.

This method of briefing does not entitle petitioner to our consideration of the point raised. However, we have examined the transcript to determine as far as we were able to do so whether the complaints which she makes against the trial justice were of such a serious character as to vitiate the trial. Aside from his possible faulty recollection of the evidence in two instances we are unable to say that his conduct deserved the complaint petitioner makes against him, and in those instances such faulty recollection was not of so serious a nature as to confuse and mislead the jury and thus warrant a new trial. Such exceptions as may relate to this point are therefore overruled.

Before concluding we may observe that there are 197 exceptions set out in the petitioner's bill of exceptions. We have considered only those that appear from her brief to bear some relation to the points raised therein. All exceptions not so briefed are deemed to be waived.

The petitioner's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

### ON MOTION FOR REARGUMENT.

#### FEBRUARY 12, 1962.

PER CURIAM. After our opinion in the above case was filed the petitioner Ruth Inez Bruce asked and received permission to present a motion for leave to reargue. Pursuant thereto she has filed such a motion, setting out therein certain reasons on which she bases her contention that justice requires a reargument of the case.

We have carefully considered those reasons and we are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

Motion denied.

*Walter I. Sundlun, Bruce G. Sundlun; Amram, Hahn & Sundlun, Ronald Rosenberg* (Washington 5, D. C.), for petitioner Ruth Inez Bruce.

*J. Joseph Nugent,* Attorney General, *Archie Smith,* Assistant Attorney General, *Joseph L. Breen,* Chief Special Counsel, for state.