The CITY OF CHEYENNE, a Wyoming Municipal Corporation, Appellant (Plaintiff below),

v.

Theodore G. FRANGOS, Appellee (Defendant below).

No. 3915.

Supreme Court of Wyoming.

Aug. 3, 1971.

Rooney & Horiskey, Graves & Smyth, John J. Rooney, Cheyenne, for appellant.

Lathrop, Lathrop & Uchner, Carl L. Lathrop, Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This is an appeal from an eminent domain proceeding brought by the City of Cheyenne to condemn real property of Theodore G. Frangos, described as Lots 1, 2, 6, 8, and the east 33 feet of Lot 7, Block 268 of Cheyenne. In the early stages, normal procedures were followed, including deposit by the City into court and the withdrawal by Mr. Frangos of $107,700 as estimated compensation for the premises. Judgment was entered vesting title in the City and appointing three appraisers who returned their certificate of award for $235,224, after which the City filed demand for trial by jury that resulted in a finding the value of the land to be $215,000. The City has appealed, urging error:

(a) in the admission over objections of evidence without proper foundation and immaterial, irrelevant, incompetent, hearsay, prejudicial and improper evidence, namely:

(1) comparables emanating from valuations established by or under the threat of eminent domain,

(2) selected sales for the purpose of determining an average,

(3) amounts attributable to sales which were actually trades, including one based on a newspaper article, and

(4) evidence of sales of property remote and dissimilar;

(b) in that the verdict was excessive, unreasonable, and unjust, appearing to have been given under the influence of passion and prejudice;

(c) because a witness on behalf of the property owner advised the jury he was a court-appointed appraiser, the court overruling objection and denying a mistrial because of the occurrence.

We make no attempt to delineate the facts of the case since the primary questions presented by the appeal relate to asserted improprieties in the nature and source of the testimony adduced. We advert first to the contention that valuation of property arising by reason of actual or threatened eminent domain action was inadmissible.

The City argues that the evidence of comparable sales was not admissible unless the sales were voluntary.[1] Both parties cite authorities concerning this contention, the property owner referring to 5

---

[1]. The evidence here objected to concerned an award made by a jury of $478,000 for an area of 69,696 feet ($6.85 per square foot) in an eminent domain proceeding wherein the United States Government sought title to the land on which the federal post office building is now located in Cheyenne.

Nichols, Eminent Domain, § 21.1, p. 21–3 (3 ed.), where it is said:

"Although the award made in another condemnation proceeding for * * * similar property would seem to have great probative value, *such evidence has been rejected.* * * *" (Emphasis supplied.)

and 1 Orgel, Valuation under Eminent Domain, § 153, p. 642 (2 ed.):

" * * * One might suppose that prior judicial valuations of * * * similar property would often be offered as evidence of market value, *but surprisingly enough the admissibility of this type of official valuation appears seldom to have been raised.* * * *"

This author then discusses Seaside Improvement Co. v. Commissioner of Internal Revenue, 2 Cir., 105 F.2d 990, but as will be obvious from the title that litigation related solely to valuation for tax purposes rather than in another condemnation suit and is of limited persuasion in the present controversy. Analysis of the various cases cited in 5 Nichols, supra, and those to which reference is made in Annotation, 55 A.L.R.2d 791, 809, and 27 Am.Jur.2d Eminent Domain § 428, p. 328, n. 11, discloses that the principle enunciated in the Annotation at 809 is the majority and applicable rule:

"In a number of cases, the courts have emphasized that the sale must have been voluntary in order that the price paid be admissible in the condemnation proceeding."

A contrary tenet would be violative of the fundamental concept governing valuations in eminent domain proceedings, well stated in 5 Nichols, supra at 21–90:

" * * * it is almost universally held that a sale is not competent unless it was voluntary on both sides; unless in other words, it was the result of the uncontrolled bargaining of a vendor willing but not obliged to sell with a purchaser willing but not obliged to buy. * * *"

We made clear our adherence to this view in Colorado Interstate Gas Company v. Uinta Development Company, Wyo., 364 P.2d 655, 659; accordingly, we hold the reference to and the use of price paid for property taken by eminent domain erroneous.

■ The property owner infers that even were it error to have admitted the challenged testimony it was not prejudicial since there was sufficient other evidence before the court. However, we disagree since as this court pointed out in State Highway Commission v. Triangle Development Co., Wyo., 369 P.2d 864, 869; 371 P.2d 408:

" * * * It is well settled * * * that error in the admission of evidence which apparently, or probably, affected or influenced the jury in its verdict, or affected the result or outcome of the trial, is prejudicial and is ground for reversal. * * *"

■ On the related argument that evidence of amounts received for sales to purchasers having the power of but not exercising eminent domain was also inadmissible, there is no simple answer. It is true we said in Colorado Interstate Gas Company v. Uinta Development Company, supra, 364 P.2d at 659, that prices brought about under the actual threat of lawsuits furnish no fair basis of market value. Even so, the mere fact that property was purchased by one vested with the power of eminent domain should not preclude testimony regarding it, if, indeed, it was a fair transaction rather than a compulsory settlement where evidence can be adduced that the seller was not influenced by fear of litigation and the buyer was under no necessity to purchase. State v. McDonald, 88 Ariz. 1, 352 P.2d 343, 347; Bruce v. State Department of Public Works, Division of Roads and Bridges, 93 R.I. 466, 176 A.2d 846, 847, rehearing denied 177 A.2d 630; Siegfried v. City of Charlottesville, 206 Va. 271, 142 S.E.2d 556, 561; Commonwealth, Department of Highways, v. McGeorge,

Ky., 369 S.W.2d 126, 128; 5 Nichols, Eminent Domain, 21–112—21–113 (3 ed.); see Reeder Flying Service v. Crompton, Wyo., 470 P.2d 281, 284. Since the cause must be reversed because of other errors, we shall not examine the instances here complained of; suffice to say that, while particular care must be exercised, such evidence, subject to the above-noted limitations, may be admitted in the discretion of the trial court.

■ The City next contends that certain opinion evidence admitted was based on averaging of selected sales, particularly one of the witnesses who said that in arriving at his opinion that the land here in issue had a value of six dollars a square foot he took thirty comparable sales from 1956 to June 1968, which had been by the square foot (from $2.64 to $42.28), actually enumerating twenty-seven of them, added the varying amounts, and divided the total by thirty, arriving at his valuation. Mr. Frangos does not dispute that expert witnesses cannot find value of condemned property mechanically by mere mathetical process without making adjustments for prices of those that are more similar or dissimilar to condemned property;[2] but because the witness stated he *felt* his method took into account inflation, availability of land, and the commercial use to which the land could be utilized, he argues there was no error. From a perusal of the witness's testimony, we are forced to conclude, despite the protestations to the contrary, that this expert erroneously reached his result mechanically since he did not make adjustments for prices of the properties more or less similar to that here taken.

■ The City advances the criticism that evidence of amounts attributable to sales of property involved in trades and opinion evidence based on amounts attributable to sales of property involved in trades was erroneously admitted and further that a news article containing such information was admitted. Although in this it is argued that the jury was subjected to evidence of trade values as substantive sales and as basis for opinion of value, the only example offered concerns one expert witness who took certain trade transactions into consideration. We can agree with the principle that to render evidence of sales competent they must be for money and not in whole or in part by way of exchange, it being generally recognized that one should not rely upon a fictitious value fixed by the parties upon their respective lands in effecting an exchange since such a value is ofttimes far from the real value,[3] but in the instant case we are unconvinced that prejudicial error occurred in this aspect. We recognize that as Mr. Chief Justice Holmes said in National Bank of Commerce of New Bedford v. City of New Bedford, 175 Mass. 257, 56 N.E. 288, 290, "An expert may testify to value, although his knowledge of details is chiefly derived from inadmissible sources, because he gives the sanction of his general experience," but as the judge also observed, "the fact that an expert may use hearsay as a ground of opinion does not make the hearsay admissible." Thus, the newspaper article here questioned was erroneously admitted.[4]

Another contention of error is that evidence of amounts received for sales of property not similar to subject property and too remote therefrom without proper foundation, and opinion evidence based on the same was admitted. While conceding the

2. As observed in Latham Holding Co. v. State, 16 N.Y.2d 41, 261 N.Y.S.2d 880, 883, 209 N.E.2d 542, 544, "an expert cannot reach his result mechanically by a mere mathematical process by averaging front footage sales prices of parcels having obvious differences one from another as denoted by their locations and sales prices, without making adjustments for the prices of those that are more similar or dissimilar to the one in question."

3. State v. McDonald, 88 Ariz. 1, 352 P.2d 343, 349.

4. The paper purported to announce a reversal of General Services Administration policy of keeping such matters confidential and reported extensive hearsay of various trade transactions and valuations.

wide discretion of a court in determining the fact of similarity in connection with the admission of evidence of amount of sales of other property as a basis for opinion testimony,[5] the City insists that in this case the testimony of two of the witnesses introduced sales as substantive evidence and not as a basis for their opinion. Counsel not only reargues initially the averaging of sales, with which we have already indicated our agreement as to error, but also complains that the property owner gave a list of thirty sales and refused to designate his adjustments for location, time, etc., and additionally alleges that another witness used substantially the same list of sales as did the property owner. However, nothing is called to our attention showing that an exception was taken to the proceedings thus challenged, and as we appraise the record there is no substantiation of error in this facet.

In view of the necessary remand for reasons already explained, we think extended discussion is not warranted concerning the City's assertion that the verdict was for an excessive, unreasonable, and unjust amount and appears to have been given under the influence of passion and prejudice. We note its argument that there was denial of a fair trial because of irregularity in the proceedings by a witness's advising the jury he was a court-appointed appraiser, but we find nothing in the record to sustain its position and agree with the trial court that there was not "enough said * * * for the jury to get any idea like that."

Reversed and remanded for further proceedings.

5. Routh v. State Highway Commission, Wyo., 402 P.2d 706, 709; State Highway Commission v. McNiff, Wyo., 395 P.2d 29, 31.