[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This case was tried before a justice of the Superior Court without intervention of a jury from December 4, 1989 through December 7, 1989.
The plaintiffs, hereinafter referred to as McKay, brought a petition for assessment of damages arising from the acquisition of land and other property rights taken by the defendant, hereinafter referred to as RIDOT, for highway purposes.
STIPULATED FACTS
The following facts are not in dispute and are stipulated by the parties and are found as a fact in this case by the trial justice:
that on June 7, 1985, RIDOT filed State highway plat #2031, together with other instruments of condemnation, in the land evidence records of the Town of North Kingstown, Rhode Island;
that the land taken by RIDOT pursuant to this filing was approximately 5,200 square feet of property of McKay, in fee simple absolute, running along the length of the McKay northerly property line;
that RIDOT also acquired a three year temporary construction easement in 2,800 square feet of McKay land along with a 1,000 square foot permanent aerial easement along McKay's westerly property line;
that a traffic control device, a red light, so called, was erected by RIDOT at the intersection of Col. Rodman Highway and Lafayette Road in December of 1977 and maintained at that location by RIDOT until the condemnation of the McKay property.
THE PETITION
McKay petitions for damages for alleged loss of legal access from Lafayette Road to Col. Rodman Highway, ingress and egress, for which compensation is sought as damages therefor. McKay's petition also seeks damages for the value of the land taken by RIDOT through condemnation procedures.
McKay raises several issues questioning the validity of the taking by RIDOT which, McKay, avers, makes RIDOT a continuing trespasser on McKay property for which damages are sought in McKay's petition.
RIDOT disputes McKay's petition for damages based on loss of access to Col. Rodman Highway from Lafayette Road and argues that McKay never had acquired a legal right of access to Col. Rodman Highway from Lafayette Road.
RIDOT argues that a freeway line was established along Col. Rodman Highway in 1953 by RIDOT or its predecessor, which extinguished any legal access from Lafayette Road to Col. Rodman Highway.
RIDOT further argues that the question of right of access to Col. Rodman Highway was, or should have been litigated in a legal action filed in the Superior Court by one Myra Thomas, McKay's predecessor in title, in civil action MP 3378. A verdict was rendered in that action for the plaintiff, Myra Thomas, and no appeal was taken.
A similar case, MP 3379 was filed by Ruth Inez Bruce which was appealed to the Supreme Court and is cited at 93 R.I. 466
(1962).
RIDOT argues that the case of MP 3378 re Myra Thomas, should be res judicata as to McKay on the issue of damages resulting from the loss of legal access to Col. Rodman Highway.
RIDOT, as a result, argues that damages of McKay, must be determined only regarding the land taken from McKay in the June 7, 1985 taking.
McKay questions the validity of the condemnation proceedings concerning the subject property in late 1953 and 1985 citing a lack of required signatures on the condemnation papers filed with the Town of North Kingstown as required by the Rules and Regulations of the RIDOT. Department regulations require the signature of three persons, the Director, the Chief Engineer and the Chief Design Engineer. Only one signature appears on plat 874 (1953) and 2031 (1985), that of the Department Director.
McKay also argues that the condemnation proceedings were defective because of a lack of proof that the 1953 and 1985 takings were advertised as required by 37-6-16 and that with regard to the filing of plat 2031 on June 7, 1985 that it was not filed within the six month time period mandated by 37-6-14 of R.I.G.L.
McKay places heavy reliance on the case of Pettis v. TheCity of Providence, 11 R.I. 372 (1876) in asserting the doctrine of strict compliance to statutes involving the condemnation of land by a sovereign.
In that case the city omitted the name of the petitioner as a party in interest in a property being taken by eminent domain. The petitioner successfully argued that, as a result, the city was a trespasser on his land due to the city's failure to comply with the notice requirement of the statute.
In the instant case, McKay argues that the same result should obtain and that RIDOT should be considered a trespasser on McKay's land because of the lack of strict compliance with RIDOT regulations and 37-6-14 and 37-6-16 R.I.G.L. with regard to publication of notice and the noncompliance with filing requirements set forth in the statute.
McKay, therefore, seeks damages for the actual land taken, the loss of access to Col. Rodman Highway and for assessment of damages based on a continuing trespass by RIDOT on the land of the petitioner.
The court finds as a fact that the allegations of the petitioner McKay are factual. That is, that there is no evidence offered by the RIDOT with regard to publication and filing requirements being met as required by statute or that anyone other than the Department Director signed the respective plats and papers filed in North Kingstown in 1953 and 1985.
The statutes and procedures indicated above are enacted to guarantee all interested parties adequate notice of impending actions which might adversely affect their property rights. Therefore notice is the key to the notion of strict compliance with the statutes and regulations cited by McKay.
In the case of Ronci Mnfg. Co. v. State, 121 R.I. 903,403 A.2d 1094, cert. denied 100 S.Ct. 1315, 445 U.S. 928, 63 L.Ed.2d. 761 (1979) the court held that "statutes providing for the exercise of power of eminent domain must be strictly construed, both in regard to the amount of property to be taken and the quantum of interest required" Id. at 1097.
In the instant case, neither McKay nor RIDOT argues that the "amount of property" or "quantum of interest" is inadequately described or delineated.
What is at issue is the value of the taking of the property involved, not a substantive disagreement as to what is to be taken nor the respective interest of the parties to the action.
Viewed in this sense the Ronci court's reasoning limits the strictness of construction to the substantive nature of the condemnation documents.
In the case at bar, noncompliance by RIDOT notwithstanding, there is ample evidence of adequate notice to the parties in 1953 vis-a-vis the filing of MP 3378 and MP 3379 by the predecessors in title of McKay and by the filing of plat 2031 in the records of the Town of North Kingstown and of actual notice to McKay in 1985, as will be highlighted later, in the rescript of this case.
The question is whether or not these statutes and procedures are advisory or substantive and whether or not noncompliance has substantially affected the rights of the McKays (or their predecessors) considering all the facts and circumstances of this case.
In 1964, our Supreme Court held that R.I.G.L. 1956 37-6-18
regarding remedies within the condemnation process, is not mandatory, but advisory. Atlantic Refining Co. v. Director ofPublic Works, 98 R.I. 167, 200 A.2d 580 (1964). In that case, the court asserted that the petitioner was not limited to a jury assessment of damages in a condemnation case (required by the language of the statute) but that the court points to the legislative intent of the statute to allow the condemnee the right to just compensation.
The gravamen of the court's reasoning in Atlantic Refining
points to the advisory nature of the statutes in implying that, as long as the property owners' rights are protected, the statute can be viewed as advisory.
A brief review of petitioner Kenneth McKay's testimony is appropriate at this time as well as that of David Dumas, Esquire, petitioner's real estate title expert. Mr. McKay testified that he purchased the land in 1972 and built the store in 1973. The family corporation leases the building from he and his wife who own the real estate.
Mr. McKay testified that when he purchased the property there was no traffic light at the intersection of Lafayette and Col. Rodman Highway. That he purchased that parcel because of its access to the Col. Rodman Highway and because it was surrounded by property owned by the Narragansett Electric Company insuring him privacy.
Without ever taking a survey, Mr. McKay testified that he knows that almost one hundred percent of his vehicular traffic comes to his business via Col. Rodman Highway.
Under cross-examination, Mr. McKay acknowledged that he went before the North Kingstown Zoning Board to achieve a zoning change to erect his store. He does not recall ever being told that, Col. Rodman Highway was a limited access highway nor does he acknowledge ever seeing a record from the Town of North Kingstown showing Col. Rodman Highway as a limited access highway. Mr. McKay testified that he always assumed he had a right to access from Lafayette Road to Col. Rodman Highway.
On redirect examination he acknowledged that the late Melvin Chernick, Esquire, was his attorney and he assumed Mr. Chernick did the search of title at the time of purchase.
McKay presented David Dumas, a real estate and title examination attorney with 22 years experience who was qualified as an expert to testify in this case.
Mr. Dumas testified that he examined the title to the subject property in preparation for his in-court testimony. He testified that he was able to trace the chain of title of the subject property from 1885 to the present. In doing so he utilized chain of title cards which were in use in the Town of North Kingstown.
He testified that Myra Thomas appears on these cards for the first time in 1945 and that notations thereon indicated that the subject property was reduced by the filing of State plat 874 and a new lot was created.
He also testified that he located a notice of lis pendens on the subject property circa 1958 which specifically referenced the premises condemned by the State of Rhode Island.
He established that Ms. Thomas was the predecessor in title to the Bruce family which was predecessor in title to McKay.
Mr. Dumas gave an opinion that a title examiner would not have found the existence of a freeway line in the process of a title examination in 1972. He testified that he did not factor the information obtained from the chain of title cards into this opinion because he was not aware of whether or not the cards were available and in use in 1972.
On cross-examination he indicated that the 1958 lis pendens would have been discovered by a title examiner and would have been pursued by an examiner in 1972. He also testified that if there was a notation that the lis pendens was discharged it would not be required to be further investigated.
He also testified that the last entry on the card for the subject property was that the parcel had been reduced by the filing of State plat 2031.
After a review of the testimony of the parties, the applicable case law and statutes and the filed memoranda of the parties in the instant case, the court finds as a fact the following:
that the petitioner Kenneth K. McKay, is an experienced, mature, successful businessman;
that in investigating the purchase of the subject property that he was assisted by competent counsel, Mr. Melvin Chernick;
that prior to purchase of the subject property a title examination was conducted of the subject property;
that the petitioner filed a petition with the Zoning Board of the Town of North Kingstown to gain a special exception for the establishment of his business or the subject property;
that the plats 874 and 2031 were filed and maintained on file in the Town of North Kingstown with the freeway lines thereon;
that chain of title cards were maintained on the subject property from at least 1945 through the present with notations of State plat 2031 and 874 filed thereon;
that a notice of lis pendens was filed on the subject property in 1958 with direct references to the State plat 874 and condemnation proceedings;
that the correspondence of the Zoning Board of the Town of North Kingstown contained the following references with regard to the subject property:
that the June 27, 1972 minutes of the Zoning Board denoted the Col. Rodman Highway as a limited access highway;
that the July 7, 1972 letter from the Planning Board to the Zoning Board of the Town of North Kingstown clearly indicated that the granting of the zoning petition of McKay to erect the building on the subject property "would not be provided with direct access off of the limited access road (Col. Rodman Highway)";
that, the testimony of David Dumas, notwithstanding, the petitioner McKay was provided with a plethora of actual and constructive notice upon which to apprise himself of the legal nature of the RIDOT condemnation action of April 1953 and the resulted loss of legal access to Col. Rodman Highway from Lafayette Road.
With regard to the issue of noncompliance with the statutes and regulations aforesaid, the court finds as a conclusion of law and as a finding of fact, that as to this subject property and the condemnation proceedings of both 1953 and 1985, as to the present petitioner, McKay and his predecessors in title, that the statutory and regulatory requirements are advisory and not substantive in nature and that further no property right in any party has been substantially affected by the acknowledged noncompliance with these statutes and regulations by RIDOT or its predecessor.
Clearly in this court's opinion, based on the credible evidence provided in this case, the full exhibits and testimony of Mr. Dumas, Mr. McKay, and Mr. Parker for RIDOT with regard to the quantum of notice both actual and constructive that all legal rights of access to Col. Rodman Highway was extinguished by the filing of appropriate documents with the Town of North Kingstown, Rhode Island. Further, the court finds, that Mr. McKay as an accomplished, successful businessman had the obligation of making all practical, legal and business inquiries commensurate with his business acumen to have assured himself that his decision to locate his business at that location was a sound one. It is evident that there was appropriate public records and information at his disposal to have acquired knowledge of the existence of the freeway line along Col. Rodman Highway and to have factored that information into his business decision. Petitioner cannot merely rely on his stated assumption that he had legal access to the Col. Rodman Highway.
Defendant, RIDOT asserts the doctrine of res judicata as a complete defense to any claim of right of access by McKay through his predecessors in title. Res judicata is an absolute bar to recovery when it is clear that there is an identity of parties, an identity of issues and a final judgment entered by a court of competent jurisdiction.
O'Brien v. Costello, 100 R.I. 422, Harding v. Carr,79 R.I. 32 (1951) and O'Brien v. State, 93 R.I. 466 (1962).
The case of Myra Thomas v. State of Rhode Island, MP 3378 was filed as a result of the State's filing on April 17, 1953 of plat #874 and supporting condemnation papers in the land evidence records of the Town of North Kingstown. This filing established a "freeway line" along the property bounding the Col. Rodman Highway pursuant to 24-10-1 and 24-10-3 of R.I.G.L. 1956.
24-10-1 "Freeway" defined: "A freeway is a way especially designed for through traffic over which abutters have no easement or right of light, air or access by reason of the fact that their property abuts upon such way".
24-10-3 Extinguishment of easements — Regulation of access.
"Where an existing highway has been designated as or included within a freeway by the director, existing easements of access, light or air may be extinguished by purchase or by taking under eminent domain, in accordance with any existing method now exercised by the director in purchasing or taking land for highway purposes. Access to the freeway from any existing highway, road or street may be regulated and restricted by the director. Access to the freeway from any new highway, road or street shall be subject to the consent and approval of the director."
This court finds as a fact and as a conclusion of law, that Myra Thomas was a predecessor in title to McKay, that MP 3378 was initiated by her to protect her rights and interests pursuant to the State's filing of April 17, 1953 of condemnation papers, including the establishment of a freeway line across the property once owned by Myra Thomas and now owned by McKays.
That the case was finally adjudicated on its merits and a verdict in favor of the plaintiff Thomas was rendered by a jury and no appeal was taken therefrom.
That while MP 3378 is silent as to whether or not the issue of access to Col. Rodman Highway was litigated, or whether or not the verdict was rendered in whole or in part by a jury on the question of access, it must be presumed in law to have been so.Harding v. Carr, 79 R.I. 32, 83 A. 279 (1951).
The court finds therefore, as a matter of fact and a conclusion of law, that McKay acquired no legal right of access to Col. Rodman Highway from Lafayette Road when the petitioner purchased the subject property from the Bruce family in 1973 that right of access having already been adjudicated and compensated for in MP 3378. The doctrine of res judicata applies to the petitioner McKay in this case. Brenner [Beirne] v. Barone, 529 A.2d 154
(1987).
In light of this ruling and on that with regard to the noncompliance issue raised by the petitioner, the court determines as a matter of fact and as a conclusion of law that the defendant RIDOT is not a continuing trespasser on the property of the petitioner and that the condemnation proceedings filed with the State plat 2031 on June 7, 1985 effectively vested title in the RIDOT according to the statutes.
McKay raises other issues with regard to the RIDOT continued use of Col. Rodman Highway at its intersection with Lafayette Road and its erection and maintenance of a traffic control device at that intersection from 1977 to 1987.
McKay argues that RIDOT's allowing the continued use of access to Col. Rodman Highway from Lafayette Road constitutes notice of limited access to the highway per 24-10-2 R.I.G.L. McKay reasons that if the 1953 filing of plat 874 effectively extinguished access to Col. Rodman Highway, then the continued allowed use of that intersection created a legal limited access use of that location.
McKay also argues that even if the 1953 condemnation was a valid taking by the RIDOT, that the erection and maintenance of a traffic control device, (red light) at that intersection between 1977 and 1987 gave notice to the public that there was a right of limited access to the Col. Rodman Highway.
RIDOT argues that the Director, under the general powers of that office under statutory and regulatory authority had the right to allow limited access to the Col. Rodman Highway for whatever period was deemed to be in the public interest.
RIDOT argues that there can be no adverse possession of State property because the use of said intersection was by permission of RIDOT and was therefore not hostile and because "time" necessary to run against a property owner to establish adverse possession cannot run against the State. See Lee v. Raymond,456 A.2d 1179 (1983) and Knowles v. Knowles, 25 R.I. 325,55 A. 755 (1903).
RIDOT also argues that the erection and maintenance of a traffic control device at that intersection was a legitimate exercise of the police power of the State. The Director of RIDOT has the legal authority and discretion to regulate traffic over freeway lines — Section 24-10-3 R.I.G.L. 1956 (as amended) and the erection and maintenance of a traffic light at an intersection does not confer special rights to the public.
With regard to these issues the court finds as a fact and as a conclusion of law, that;
there has been no credible evidence introduced in this case to prove that the RIDOT abandoned the freeway line established along Col. Rodman Highway in 1953;
that the allowance of traffic to flow over the freeway line so established at that intersection was an act within the power of the Director of RIDOT pursuant to 24-10-3 R.I.G.L. 1956 (as amended);
that this activity did not give notice to the general public of a limited legal access to the Col. Rodman Highway which created in this petitioner or the general public any rights over said use;
that the temporary use of the intersection so described including the erection and maintenance of a traffic control device at that location was within the general powers of the Director of RIDOT as a legitimate function of that office, and conferred no legal right of access in this petitioner or the general public;
that there has been no evidence of adverse possession of any right of access to the Col. Rodman Highway by the petitioner or the general public as a matter of fact or law;
that any legal right to access to Col. Rodman Highway was extinguished in April 1953 when RIDOT or its predecessor filed plat 874 and other condemnation papers with the Town of North Kingstown.
DAMAGES
Damages in this case, in light of the preceding rulings by the court will be considered only insofar as they have been proven with regard to the real estate actually taken by RIDOT from the petitioner for the Route 4 extension project.
The petitioner has the burden of proving that which is asserted or claimed in the Petition for Damages. McKay presented one witness with regard to the value of the taking of real estate by RIDOT.
Mr. William E. Coyle, Jr. was qualified as an acknowledged expert on real estate matters in the State of Rhode Island. He presented an analysis of the subject property and an opinion of the value of the taking based on comparable sales of two properties, Westerly Furniture Store and Ethan Allen Furniture on Route 5 in Cranston. Using comparable sales, the witness valued McKays' at $745,850 as of the day of the taking by the State.
He testified that after the taking the highest and best use of McKays' was no longer retail furniture sales, but a warehouse and he valued the property at $354,000 for this purpose.
He testified that the damage to the plaintiff as a result of the taking was therefore $391,850 when compared to the Westerly Furniture property and $390,000 when compared to the Ethan Allen property.
This analysis was predicated on the loss of a legal right to access Col. Rodman Highway from Lafayette Road. Mr. Coyle admitted that if petitioner did not have a legal right of access to the Col. Rodman Highway from Lafayette Road that his opinion regarding the value of the taking would be significantly altered.
He gave no opinion of the value of the taking if there was no legal right to access in the petitioner.
The RIDOT presented Walter A. DiPrete who was qualified as an expert real estate appraiser who conducted an appraisal of the subject property for RIDOT. His appraisal was completed on September 2, 1988.
Both he and Mr. Coyle agreed that the most reliable method of appraisal was the comparable sales or market data approach. While relying on the market data approach, Mr. DiPrete testified that he also utilized the cost analysis method to verify the data obtained via the comparable sales method.
In his comparable sales approach, the witness evaluated three sales deemed to be similar in nature to the subject property. The first property was Cardi Furniture, a two-story furniture store located at 6946 Post Road in North Kingstown, Rhode Island. The second was the Bond Furniture Store on Warwick Avenue in Warwick and the third was a retail store on Charlestown Beach Road in Charlestown.
The witness considered these properties and the subject property under two assumptions; that the petitioner had a legal right to access Col. Rodman Highway and that the petitioner had no legal right to access to that highway.
He testified that based on the comparable sales of the properties mentioned, after making certain adjustments for time, location and zoning, he established in his expert opinion the value of the petitioner's property prior to the taking to be $462,700.
Under the legal access assumption, Mr. DiPrete valued the property of the petitioner after the taking to be $227,190 resulting in damages to the petitioner of $235,510.
Under the no legal access assumption, Mr. DiPrete valued the petitioner's property prior to the taking to be $227,190 (he testified that legal access to the subject property increased its value 50%) and after the taking the value of the property to be $227,190 resulting in damages to the petitioner in the amount of $4,160.00.
Mr. DiPrete described the land taken as 5,200 square feet of land, quadrangle in shape 40 to 50 feet wide on the highway side, narrowing to 15 feet on the east end of the parcel. The witness valued the property at .80 per square foot.
The witness attempted to advance valuation on a third assumption that the parcel was purchased by a buyer with actual access to Col. Rodman Highway but with knowledge that there was no right to legal access to that highway but the purchaser went ahead on a "roll of the dice" basis that access would not be foreclosed. This assumption was discredited as being speculative and unsupported by evidence.
The court finds as a fact that the testimony of William Coyle re the value of the taking and damages to the petitioner as a result of the RIDOT taking was predicated solely on the assumption that the petitioner had a legal right to access the Col. Rodman Highway and that that right was taken by RIDOT which the court has ruled not to be the case. Therefore Mr. Coyle's testimony on that basis is without merit and is not probative on the question of damages to the loss of the petitioner.
The only credible evidence before the court, although in dispute, is the opinion of Mr. DiPrete, the witness for RIDOT.
With regard to that testimony the court finds it to be based on a careful, systematic analysis based upon reliable standards and evaluations used routinely in the real estate appraisal profession. The comparable sales offered by the expert and the adjustments of value thereto in relation to the McKay property amount to credible evidence upon which to base a professional opinion.
At trial it is the province of this court to determine the amount of just compensation due to the petitioner if there is credible evidence, regardless of how it was provided, upon which to base a reasoned decision of value of the land taken by eminent domain by RIDOT.
See 1 Nichols, The Law of Eminent Domain Sections 1-10; andCity of Newport v. Newport Water Corp., 57 R.I. 269, 189 A. 843
(1937).
In this case, based on the findings of fact and conclusions of law previously stated with regard to the substantial issues raised in this case this court rules that just compensation for the petitioner in this case is $4,160.00 based on the square foot value of the taking by RIDOT as testified to by Mr. Walter DiPrete; plus interest and costs less any amounts paid in advance by RIDOT.