(No. 34905.—

THE CITY OF CHICAGO, In Trust for Use of Schools, Appellee, *vs.* LOUISE E. BLANTON *et al.*, Appellants.

*Opinion filed November 26, 1958.*

MORGAN, HALLIGAN & LANOFF, of Chicago, (DONALD T. MORRISON, JR., of counsel,) for appellants.

FRANK R. SCHNEBERGER, and FRANK S. RIGHEIMER, both of Chicago, for appellee.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

On February 14, 1955, a petition was filed in the circuit court of Cook County by the city of Chicago, in trust for the use of schools, to condemn for educational purposes six vacant adjoining lots fronting for a distance of 300 feet upon North Wolcott Street in the Rogers Park area of Chicago. The owners of said property, namely, Louise E. Blanton, Ivar A. Blanton, Mary Kinsch, Margaret Schumer, Joseph Schumer, Katherine Reisterer and Frank Reisterer, were named as parties defendant along with Orland, Incorporated, a contract buyer, Edmund J. Kucharski, the Cook County registrar of titles, and the city of Chicago. At the trial the property was viewed by the jury, after which expert testimony was offered by both sides as to the value thereof. According to petitioner's witnesses the total worth of the lots ranged from $24,000 to $25,500 while the experts for the defense placed their value between $40,500 and $42,000. Petitioner also introduced proof of three similar sales in the vicinity ranging in price from $70 to $83 per front foot and defendants cited another parcel which sold for $175 a front foot. Defendants attempted to show that the subject property had been previously sold for $37,500 under a sales agreement with the defendant, Orland, Incorporated, and that a similar lot was sold in August, 1955, for $145.50 a front foot, but such evidence was excluded. A verdict was thereafter returned in the sum of $25,500, being $85 per front foot, and judgment was rendered thereon. Upon direct appeal to this court the sole question presented is whether the trial court erred in refusing to admit the aforesaid proof.

The excluded sales agreement, executed by the present defendant, Orland, Incorporated, on October 12, 1954, recited that $1,000 had been delivered to the vendors as earnest money, provided for the payment of $19,000 upon delivery of warranty deeds to three of said lots, stated that

the $17,500 balance would be paid not later than April 15, 1955, contained other usual sale covenants, and ended with the following language:

"If for any reason whatsoever, the purchaser hereunder shall indicate on or before March 15, 1955, that it does not wish to proceed further with the terms of this contract, then and in that event, any amounts herein paid to apply on the purchase of Lots 11 to 13 herein mentioned, shall become forfeit to the sellers herein as liquidated damages, specifically liquidated damages being unable to ascertain and in such event, purchaser shall be relieved of any further liability hereunder."

Although defendants offered to prove that the contract was executed in good faith without knowledge of possible condemnation, that the sum of $1,000 was actually paid as earnest money, and that the agreement was rescinded and earnest money returned only after the eminent domain petititon was filed, the trial court refused such evidence on the ground that the sales agreement constituted a mere option to purchase which would itself be inadmissible under the facts of the present case. We concur in this decision. By the terms of the agreement the vendee, but not the vendors, was free to either accept the property at the stipulated price or reject it *in toto* and forfeit the paid consideration. Whether the option would at any time be exercised so as to subject vendee to the same specific performance and damage obligations as were incumbent upon the vendors, was entirely within the former's discretion. Such being the case, the so-called real-estate contract was essentially an option agreement and subject to the principles of law applicable thereto. It has long been held that proof of *bona fide* offers to sell may be admitted in condemnation cases as evidence of real-estate value where no recent sales of similar lands have occurred in the vicinity, (*Sanitary District* v. *Boening,* 267 Ill. 118; *Department of Public Works* v. *Lambert,* 411 Ill. 183; *City of Chicago* v.

*Lehmann,* 262 Ill. 468), and although we have been referred to no Illinois case upon this point, it is our opinion that because of their unilateral nature and general similarity, the same rule must apply to executory options of purchase. Since evidence of actual real-estate sales was introduced in the present proceedings, the trial court did not err in refusing to admit proof of the option agreement.

We must also decide whether the circuit court properly excluded evidence of an actual sale of neighborhood property occurring some six months after the filing of the condemnation petition. It is of course elementary that eminent domain proceedings were designed to afford the property owner a means by which he would receive in money the full, fair cash market value of the condemned land under the conditions which existed, not at time of trial, but at the time the eminent domain proceedings were instituted. (*City of Chicago* v. *Farwell,* 286 Ill. 415; *Forest Preserve Dist.* v. *Eckhoff,* 372 Ill. 391; *Forest Preserve Dist.* v. *Collins,* 348 Ill. 477; 18 Am. Jur., Eminent Domain, p. 877.) To aid in establishing such value, this court has consistently held that evidence of voluntary sales of similar parcels occurring in the same vicinity at or about the time of filing are admissible unless such proof causes a confusion of issues which offsets the benefits to be derived therefrom. (*Kankakee Park Dist.* v. *Heidenreich,* 328 Ill. 198; *Forest Preserve Dist.* v. *Kean,* 298 Ill. 37; *Forest Preserve Dist.* v. *Draper,* 387 Ill. 149.) No general rule can be laid down regarding the degree of similarity which must exist between property sold and that condemned in order to make evidence of such sale proper. Since no two pieces of real estate are exactly alike and since economic influences are constantly changing, the admission of such proof rests largely in the discretion of the trial court, and its decision will be reversed only where such discretion has been clearly abused. (*Forest Preserve Dist.* v. *Lehmann Estate, Inc.,* 388 Ill. 416; *Forest Preserve Dist.* v. *Eckhoff,*

372 Ill. 391; *Forest Preserve Dist.* v. *Wing,* 305 Ill. 194; *Forest Preserve Dist.* v. *Draper,* 387 Ill. 149.) Here the property sold, although similar in character, was disposed of some six months after the present proceedings were commenced. Uncontradicted testimony showed that in this predominantly residential area, a serious school problem existed with public educational facilities being at least a half mile away. This being the case, it is only reasonable to assume that the filing of the instant condemnation action to acquire property for such a school would materially affect the price of neighborhood real estate by presenting a new valuation influence which had not previously existed. As was pointed out in *Cook* v. *South Park Comrs.* 61 Ill. 115, and *Kerr* v. *South Park Comrs.* 117 U.S. 379, 29 L. ed. 924, the latter having originated in Illinois, the mere taking of property for public use places such real estate in a different category than surrounding lands which will not be taken and which will either receive special benefits or burdens from the condemnation. This distinction was recently recognized by this court in *Department of Public Works and Buildings* v. *Finks,* 10 Ill.2d 15, where we held that an offer of purchase received subsequent to the filing of a condemnation petition was inadmissible as proof of value. Although defendants have suggested that any price variance resulting from these proceedings could be called to the jury's attention by cross-examination and argument, such would only add collateral matters and further confuse the issues. Furthermore, it must be pointed out that in the instant case the excluded sale was based upon a consideration of $145.50 per front foot, which was well below the price of $175 per foot paid for similar property cited by defendants and only slightly higher than defendant's expert valuations. Thus, even had it been admitted, it would not have enlarged the price range which the jury was asked to consider. Based upon these facts, it is our opinion that the lower court did not abuse its discretion in

refusing evidence of subsequent sale and that the judgment of the circuit court of Cook County should therefore be affirmed.

*Judgment affirmed.*