HARRY M. REDFIELD et ux., appellees, v. IOWA STATE HIGHWAY COMMISSION, appellant.

## No. 50352.

(Reported in 110 N.W.2d 397)

August 15, 1961.

Evan L. Hultman, Attorney General, C. J. Lyman, Special Assistant Attorney General, and Keith E. McWilliams, of Des Moines, for appellant.

Brunk, Janss & Dreher, Charles F. Wennerstrum and George A. Wilson, all of Des Moines, for appellees.

1258

Thompson, J.—This case now appears for the second time. See Redfield v. Iowa State Highway Commission, 251 Iowa 332, 99 N.W.2d 413. The first case was an appeal by the plaintiffs from a jury verdict and the resulting judgment which awarded them a lesser amount for their property taken than had been fixed by the condemnation commission. The location of the property, size of the tract owned by plaintiffs and the amount taken from it by the Iowa State Highway Commission, hereinafter referred to as the Commission, in the condemnation proceedings are set out in the previous opinion and will not be repeated. The jury verdict in the second case, now before us, gave the plaintiffs an award higher than that of the condemnation commission.

The major question in the first case was whether the plaintiffs might show the sales prices for similar and comparable tracts of lands in the same general vicinity as substantive evidence of the value of the tract then being taken. We had previously held that these matters might be inquired into only on cross-examination of expert value witnesses to test their knowledge and competency. Redfield v. Iowa State Highway Commission, supra, loc. cit. 251 Iowa 337, 99 N.W.2d 416, and cases cited. But in the first Redfield case, supra, by a divided court, we overruled these holdings and established the rule that evidence of such sales might be received as substantive proof of the value of the property being taken.

Foreseeable difficulties in the administration of the new rule have promptly developed. We are now faced with the necessity of determining what are similar and comparable properties, and similar and comparable sales, at least to the extent that evidence of them may or may not be competent to be submitted to the jury. We had this problem in Iowa Development Co. v. Iowa State Highway Commission, 252 Iowa 978, 108 N.W.2d 487. The major difficulties in the case at bar revolve around the same question.

The defendant assigns five errors relied upon for reversal. Two of them are concerned with the admissibility of evidence of claimed comparable and similar properties and sales, in different forms. Two others assert error in rulings on evidence

and remarks of the court, and since we have determined the cause must be reversed need not be considered. They are not likely to arise on another trial. The fifth error assigned by defendant and the error asserted in plaintiffs' cross-appeal are closely related. They deal with the allowance of attorney fees to plaintiffs' attorneys.

I. Defendant's first assigned error is quoted: "1. That it was error for the Trial Court to admit evidence of the sale price of other land when that land was enhanced in value by the benefit of the contemplated improvement, for which the land under consideration was taken."

It will be noted that it is not contended that the "other land" referred to in the assigned error was not similar in location, size of tracts, or otherwise. The defendant rests solely upon the contention that the other tracts of which sales were admitted into evidence had been enhanced in value by the contemplated improvement, and should have been excluded for that reason. The plaintiffs contend in answer that several of the alleged comparable sales, of which evidence was admitted on the second trial, were approved by us in the first case as sufficiently similar so that the evidence should have been admitted. This is true as to some of the tracts, but there were others not offered or considered in the first case. If any of the latter were improperly admitted, prejudicial error might appear. The exact question, whether enhancement in value of the tract being taken by the making of the improvement for which it is condemned may be considered, is not directly before us. The defendant complains that the other sales of which evidence was admitted were enhanced in value by the making of the improvement. But we think the same problem is involved. If evidence of enhancement of the primary tract, the one being condemned, by the making of the improvement was admissible, then the fact that the sales of otherwise comparable tracts were enhanced in amount by the same improvement would not preclude the right to have them considered by the jury. On the other hand, if evidence of enhancement in value of the primary tract was not admissible, enhancement in value of the other tracts by the improvement would make evidence of sales of

them inadmissible. They would not then be comparable because a factor entered into such sales which could not be considered in determining the value of the tract taken. But we fear the point is not available to the defendant. We fail to find any showing that the opinions of the experts or the sales, evidence of which was admitted, were influenced by the improvement. Counsel for the Commission at the time objected because it was not shown that the alleged comparable sales were not enhanced by the construction of the highway. Their attitude is shown by this statement in their reply argument: "It is a matter of common knowledge that property increases in value because of the construction of an Interstate Highway." We are cited to no authority for this.

The real point is, were the alleged comparable sales affected and their dollar amount enhanced by the location and construction of the highway? We cannot assume so. The defendant might on cross-examination have inquired as to whether this element entered into the sales price, or influenced the opinion of the expert, so as to enhance the value, and if the answer was in the affirmative have based an objection thereon which would have raised the question. It seems clear that in some cases the improvement might add to the value, and in other cases detract from it. Thus, living in a residence property immediately adjacent to a busy interstate highway might not be desirable to many people, while for business purposes such an improvement could enhance the value of bordering property. We think the burden was on the defendant to show that enhancement of value was considered and affected the claimed comparable sales.

Considered on its merits, the error assigned by the defense at this point presents an interesting question. We have held that it is proper to admit evidence of enhancement of value by the making of the improvement for which the property is taken. Ranck v. City of Cedar Rapids, 134 Iowa 563, 572, 111 N.W. 1027, 1031; Snouffer v. Chicago & N. W. Ry. Co., 105 Iowa 681, 75 N.W. 501. Iowa Development Co. v. Iowa State Highway Commission, supra, 252 Iowa loc. cit. 989, 108 N.W.2d 493, 494, is also claimed by the plaintiffs to uphold

this principle. The defendant attempts to distinguish these cases, but it is doubtful this can fairly be done, at least in Ranck and Snouffer.

But the defendant also urges that if the cases cannot be distinguished, they should be overruled, as being in conflict with section 18 of Article I of the Iowa Constitution. We quote this section so far as material: "Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof, as soon as the damages shall be assessed by a jury, who shall not take into consideration any advantages that may result to said owner on account of the improvement for which it is taken."

It is the apparent thought of the defendant that this section prohibits consideration of advantages that may accrue to the owner both as adding to the value of his remaining land —which we have many times held—but also that it forbids allowing enhancement in value of the part taken by the improvement. The question of the application of the language of the Constitution was not discussed and apparently not considered in the Ranck, Snouffer and Iowa Development cases. What the result would have been if it had been presented to the court we do not know. The question is intriguing; but for the reasons set forth above we do not consider it. The record does not make it available to the defendant.

II. Another assigned error asserts that Exhibits Nos. 18, 19, 20, and 23 were not admissible in evidence because they were sales contracts for payments in installments over a period of time, and were not substantive evidence of the value of the property in question. As to Exhibits Nos. 19 and 20, we find that in the previous opinion in this case, loc. cit. 251 Iowa 336, 337, 99 N.W.2d 415, 416, we held these were comparable properties; and this became the law of the case. We cannot consider the admission of these as error now. The plaintiffs contend that we also held Exhibit No. 23 properly admissible; but with this we do not agree. There was some evidence about the sale evidenced by this exhibit, but the exhibit itself was not offered. It is true we said: "We are equally of the belief, however, that the opinions of appellants' [plaintiffs'] experts as to other

rejected properties should have had favorable consideration * * *." 251 Iowa loc. cit. 336, 99 N.W.2d 416. But we were there considering certain specific exhibits which had been offered, not including the present Exhibit No. 23.

Exhibit No. 18 was not offered in the preceding case and we must consider its admissibility in the case at bar as a matter of first impression. The question of its comparability in size and location is not presented; the sole point for determination is whether it may be considered because it was not a sale for cash, but was a contract of sale and purchase with payments to be made as specified. It is dated August 14, 1954, describes the land sold by H. E. Kellar and Eula Kellar to Roy Greenwood and Estella Greenwood, for the sum of $85,000 and calls for payment of this sum by paying $5000 on the execution of the agreement and the balance of $80,000 in this way: "$500.00 to be paid in cash upon request for Warranty Deed for each lot, the dimensions of which shall not exceed those set out in the proposed plat of Ronnas Acres until all of said principal sum and interest on every part thereof at the rate of 4 per cent per annum from January 1, 1956, payable monthly, is fully paid." Another clause, No. 19, of the contract says: "First and second parties further agree that this agreement shall run for a period of three years from the execution of this contract, and at that time, the balance then due and owing shall be paid in full."

The clause last quoted is ambiguous. Literally interpreted, it seems to mean no more than that any sums unpaid for lots to which deed has been given, or interest, are unpaid at the expiration of three years, all shall be due. Perhaps the parties interpreted it to mean that the entire unpaid remainder of the $80,000, and interest, would be due at that time. But there is nothing in the remainder of the contract that makes anything "due and payable" in three years, except $500 as each lot was sold and perhaps interest. However that may be, we think the contract shows a speculative value to the extent that it is not a fair test of market value, which is the true test in condemnation proceedings. Korf v. Fleming, 239 Iowa 501, 518, 32 N.W.2d 85, 95, 3 A. L. R.2d 270; Des Moines Wet Wash

Laundry v. City of Des Moines, 197 Iowa 1082, 1089, 198 N.W. 486, 498, 34 A. L. R. 1517. And this means a sale for cash.

 The fact that a sale claimed to be comparable may not have been for cash, but by contract, does not always mean that it may not be admissible as having some bearing on the cash market value. Nichols on Eminent Domain, Third Ed., Volume 5, page 280; Forest Preserve District of Cook County v. Barchard, 293 Ill. 556, 127 N. E. 878, 881. Such sales, if made in good faith and if they seem to have a fair relation to the actual cash market value, may be admitted by the trial court to assist the jury in arriving at the real cash market value. But we think that the contract should not appear to be based on speculation as to the prospects of development of the tract sold. As to the Greenwood tract which we are now considering, if we assume Clause 19 means that the entire amount should be due and payable in three years, it is still apparent that no sums were due before that time except as lots were sold and deeds demanded. What might accrue between the date of the contract and three years later would be entirely dependent upon how successful the contract purchaser was in selling the lots which he planned to lay out. It seems apparent that a sale of this sort, in which the purchaser was under no obligation to pay anything for three years, during which he could plat and sell lots in a real-estate development, has no fair relation to a sale for cash. A purchaser might with very little capital embark upon a speculation of this sort, and might well agree to pay a higher and speculative price. If the venture proved successful, as apparently it did here, he would be able to pay the balance due; if not, he might, if solvent, be held to pay in full. But the entire enterprise is tinged with speculation and we think does not reflect a fair market value.

 There is another potent reason why this contract, Exhibit No. 18, should not have been admitted. As the plaintiffs admit, if a part of the consideration is not to be paid in money, evidence of other sales is not admissible. With commendable frankness they cite Nichols on Eminent Domain, supra, where it is said: "However, sales which are partially or wholly for

.

a consideration other than money, have generally been excluded." They also cite Lanquist v. City of Chicago, 200 Ill. 69, 65 N. E. 681, 683, and other cases. It is only necessary, therefore, to point out certain provisions of Exhibit No. 18 which come within the rule. Clause 13 provides that the land was sold subject to current leases and the vendor and his tenants had the right to all crops and might enter on any tracts sold for lots to harvest grain; and the vendor likewise retained the right to farm any and all tracts without compensation to the purchaser. The purchaser further agreed by Clause 16 to lay an adequate storm sewer to handle surface water according to the recommendations and requirements of the City of Des Moines; and by Clause 17 to construct an adequate pumping station to take care of all sewer water anticipated in the development of the land; by Clause 18 to post an indemnity bond approved by the City of Des Moines to insure the installation of all public improvements required by said city; and by Clause 20 to pay all special assessments levied to pay for improvements. The contract has the usual provision that upon failure of the purchaser to perform any of his agreements it may be forfeited on thirty days notice. Not only are these provisions further evidence of the speculative nature of the sale and the desire of the vendor to protect himself from any mischance or liability that might accrue to him—none of which would be needed in a cash sale—but they show clearly that part of the consideration was in something other than cash. The agreement to build storm sewers and a pumping station were just as much a part of the consideration as any other payments, and the contract could be forfeited if these things were not performed. The right to grow crops on the land was another consideration of unspecified value and certainly not a money payment.

██ We turn then to a consideration of Exhibit No. 23, a contract dated January 29, 1958, between Charles Van Dyck and Billie Van Dyck, husband and wife, as vendors, and Ethel M. Boss and others, as vendees. This provided for the sale of certain lands whose comparability as to size and location and other general characteristics is not questioned, for the sum of $100,000, payable $20,000 on the execution of the contract, and

the remainder as follows: "Only $5,000.00 plus accrued interest payable on February 1, 1959; only $5,000.00 plus accrued interest payable on February 1, 1960; and $5,000.00 or more plus accrued interest payable on the first day of February of each succeeding year thereafter." This means that the vendee has the right if he so elects to make the payments over a period of 16 years. While we have above announced the principle that sales on contract in which part of the purchase price is to be paid in deferred installments are not necessarily to be excluded as not having any relation to fair cash market value, we think this is a rule which should be applied with considerable care. Many considerations enter into deferred payment sales which are not present when cash must be paid. The American people are characteristically users of credit; homes, automobiles, and household appliances and furniture are sold daily on long-term credits with installment payments; and it is common knowledge that these purchases eventually cost the buyer more than if he could provide the cash. On the other hand, there are tax questions sometimes involved which make the vendor prefer to secure his money in several yearly payments rather than in a lump sum which might involve him with the capital gains tax or other governmental mulctings. The contract under consideration here has a somewhat peculiar provision as to the first two $5000 payments; it is "only" that amount, plus interest, that may be paid. Some vendors prefer deferred payments because it is a means of investing their money; and many other considerations enter into installment purchases which are not present in cash transactions. We think a contract which extends the time for payment over 16 years, when conditions may be far different as to value of property, value of money, and otherwise, does not sufficiently reflect actual cash market value to be admissible.

III. The defendant assigns error upon the allowance of attorney fees to plaintiffs' attorneys, and the plaintiffs appeal from certain holdings of the trial court on the same question. Whether this question will arise upon another trial we do not know, and so decline to give an advisory opinion in advance. Plaintiffs' appeal is dismissed without prejudice to their right

to raise the same questions later if the issues become material after another trial, and the defendant will have the same right to make the contentions raised by its assignment of error referred to in this division.

For the errors pointed out in Division II the cause must be reversed.—Reversed and remanded.

All JUSTICES concur.