*44
 
 Van Voorhis, J.
 

 On January 23,1959 the State appropriated part of claimant’s property located in the Town of Colonie, Albany County, for highway purposes. The Court of Claims found that the highest and best use of the property before the appropriation was for commercial purposes, that the highest and best use of the property remaining after the appropriation was for limited commercial use, such as for advertising signs, or for residential use by sale to an adjoining owner, that the fair and reasonable market value before the taking was $22,500 and after taking was $500, and that claimant was damaged in the amount of $22,000. The Appellate Division found that the award was excessive and should be reduced to $17,000
 
 (Per Curiam,
 
 22 A D 2d 718).
 

 We have concluded that the order should be reversed and a new trial granted for the reason that the theory of valuation advanced by claimant and adopted by the courts below is erroneous. This presents a question of law, and requires that the award be vacated and, under the circumstances here presented, a new opportunity afforded to claimant to prove its case. It would not be fair to reduce the award to the amount supported by the expert for the State which would amount to $2,580. It is equally clear that the award of $17,000, as found by the Appellate Division, cannot stand without evidence to support it. The reason on account of which the testimony for claimant lacks probative force is as follows:
 

 The only testimony introduced in behalf of claimant concerning value is that of its real estate expert, Roland J. Babbitt, who arrived at a value of $250 per front foot. This produced a value for the parcel, in his judgment, of $29,900 rounded to $30,000. He valued the remaining landlocked portion at zero. .The Court of Claims and the Appellate Division discounted this figure, finding $22,000 and $17,000 respectively after deducting the value of what was left after the appropriation. If there were other evidence to support the Appellate Division’s finding of $17,000, its order might be affirmed. The difficulty is that the claimant’s expert used an illegal method of arriving at the front footage value, and, therefore, the Appellate Division had nothing before it on which to fix a value in excess of that to which the expert for the State testified. If his opinion had any probative force, even though his valuation were deemed exces
 
 *45
 
 sive, the Appellate Division as well as the Court of Claims was empowered to find a value at some intervening figure. The illegality in the method of valuation by claimant’s expert is that it was based entirely upon averaging the per front foot sales prices of a number of other parcels of land along the highway on which it fronted known as Route 7, the Troy-Schenectady Road.
 

 Averaging the per front foot selling prices of neighboring properties is a faulty procedure. One of these sales (Faulkner) reflected a front foot value of $400, another (Galloway) of $200, a third (Swatting) of $95, a fourth (Miller) of $275, another Miller parcel sold at $168, and still another parcel (Gaffers) at $300 per front foot. Three years before it was appropriated, the subject parcel was bought by claimant for $1,500, which reflected a front foot value of $12.50. Its value as found by the Court of Claims reflected a front foot value of $187.50, and by the Appellate Division of $145.83. Neither court indicated how it arrived at its valuation.
 

 The difficulty in applying expert Babbitt’s method of averaging front foot valuations is that these parcels could not have been exactly comparable—particularly the one with an indicated front foot value of $400 as contrasted with the one with an indicated value of $95. Properties cannot be comparable if one is worth more than four times the value of the other. Sales of other parcels, where used as criteria in the evaluation of the subject property, need to be adjusted to differences between one another and between each of them and the subject property. An expert witness is able to make these adjustments out of his own experience, and, after allowing for such differences, can find them helpful in arriving at the particular value which he places upon the subject property, which is frequently different from the values of the other sales parcels. The trouble here is that expert Babbitt did.not do this. He simply took the indicated front foot values of these parcels and averaged them, then multiplied the resulting figure by the frontage of the subject parcel. The query immediately arises in one’s mind, did the subject parcel more nearly resemble the- other with an indicated front footage value of $400, or the one that -sold at $200, or the $95 front footage parcel, the $300 one or the $168?- All of the parcels, except those whose value was increased by the
 
 *46
 
 improvement, could be taken into account, their similarities and differences noted by the expert, who could then arrive at a front footage valuation for the subject property taking account of resemblances and differences. Upon the other hand, an expert cannot reach his result mechanically by the mere mathematical process of averaging front footage sales prices, of parcels having obvious differences one from another as denoted by their locations and sales prices, without making adjustments for the prices of those that are more similar or dissimilar to the one in question.
 

 It is apparent from the locations as well as the sales prices that these other sales were differently comparable one to another, or to the subject property, as is indicated by the circumstance that several of them (including Faulkner and Gralloway) were adjacent to, in fact bordered on three sides, the Latham Shopping Center. The subject parcel is half a mile from the Latham Shopping Center. Few factors affecting the value of commercial real property are better known than the value which is produced by being adjacent to a busy shopping center. Moreover, these parcels on Latham Circle were being assembled to form a single site for a savings and loan association. Babbitt admitted that this was
 
 “
 
 a very desirable location for a bank”. No such factors augmented the value of the subject parcel, yet expert Babbitt used the figure of'$400 per front foot in his mathematical calculation resulting in the $250 per front foot which he applied to the subject property, without any weighting or adjustment for the circumstance that it applied to property that was adjacent to the shopping center whereas the subject property was half a mile away. Moreover it is conceded, as appears from the appropriation map, that the subject property had a depth of but 65 feet at the eastern border, was not at right angles to Route 7, and that the depth throughout most of its frontage on Route 7 was less than 100 feet in contradistinction to the greater depth of the parcels alleged to be comparable.
 

 This is different from the usual situation where the degree of comparability presents a question of fact, leaving adjustments on account of differences to be weighted and evaluated by expert witnesses. Here the expert acknowledged that he based his opinion solely upon an averaging of the front footage reflected by the sales of these other parcels of land variously located along the Troy-Schenectady Road.
 

 
 *47
 
 There is the added circumstance that at least two of these parcels, whose foot frontage selling price was averaged into the resultant $250 a foot, were sold in 1960 (Smith to Swatling) and in 1960 or 1961 (Miller to Slotnick) which was after the appropriation of the subject property in 1959. Manifestly the impact of the Northway had been felt by this time. It is established that the benefit from the improvement as originally contemplated may not be taken into account in fixing the value of the subject parcel
 
 (United States
 
 v.
 
 Miller,
 
 317 U. S. 369).
 

 If this method of averaging front footages were legally admissible, it would mean that every parcel of land fronting upon Route 7 in this entire area was worth $250 per front foot, which would be a legally erroneous method of arriving at values as demonstrated by the sales of these various parcels themselves at widely different figures. If Mr. Babbitt’s method were correct, they should all have sold at or about the same value per front foot.
 

 The order appealed from should be reversed, and the case remanded to the Court of Claims for a new trial, with costs to abide the event.
 

 Chief Judge Desmond and Judges Dye, Fuld, Bueke, Scileppi and Bergan concur.
 

 Order reversed and a new trial granted, with costs to abide the event.