SOCONY VACUUM OIL COMPANY, a/k/a
Mobil Oil Co., Appellee,

v.

STATE of Iowa, Appellant.

No. 53412.

Supreme Court of Iowa.

Sept. 5, 1969.

Raymond Rosenberg, Des Moines, for appellant.

Ahlers, Cooney, Dorweiler, Allbee & Haynie, Des Moines, for appellee.

BECKER, Justice.

This is an appeal by the State following a condemnation award for property appropriated by the State for use as a part of the Capitol Grounds Extension Project. The district court jury returned its verdict on March 29, 1968. Defendant State's motion for new trial was overruled and the State appealed to this court.

In such cases no judgment except for costs is entered. See section 472.23, Code of Iowa.

The Capitol Planning Commission is an agency of the State provided for in chapter 18A, Code of Iowa.

Chapter 28, Laws of the 60th General Assembly in 1963 made an appropriation to the Capitol Planning Commission and provided for research and report on future expansion and development to be submitted to the 61st General Assembly.

Chapter 481 appearing in the published Acts of the 61st General Assembly and entitled a Joint Resolution by the General Assembly, accepts and adopts the report as the master plan for future development of the State Capitol Grounds of the State of Iowa.

Chapter 482, Acts of the 61st General Assembly is a Joint Resolution approved May 6, 1965. It empowers and directs the State Executive Council to proceed to acquire by gift, purchase, condemnation or otherwise certain specifically described property. Item VI, section 4 of this resolution lists Lots 1 through 12, Subdivision of Block 4, Allen, Polk and Hubbell's Replat as a part of the property to be acquired.

The property herein involved is described in plaintiff's petition as an irregular piece south of and adjacent to lots 3, 4, 5 and 6, block 4, in B. F. Allen, J. S. Polk and F. M. Hubbell's Replatting, and states that the defendant desires condemnation of the real estate for the purpose of improving and expanding the State Capitol and Ground facilities; that a condemnation commission assessed the damages from such condemnation and that plaintiff has appealed; that defendant has or will in the very near future enter upon and take possession of the land.

From the description in plaintiff's petition it is difficult to determine that the property sought to be appropriated is within the authorization by the legislature. A tract south of and adjacent to specifically described property is not necessarily included within the authorization. However, plaintiff's allegations were admitted in defendant's answers (except for the extent of plaintiff's damage) and the case was tried on the supposition that the property had been appropriated by the State. It also appears that following the award by the sheriff's jury and before trial in district court there was an application and order for partial payment to plaintiff and the deposit of further funds with the Sheriff of Polk County.

The case having been tried on the premise that the property had been appropriated by the State and the authority not having been challenged this question is moot and we proceed from the same premise.

The property involved is located on the northwest corner of the intersection of E. 14th Street and East Court Avenue and is

southeast of the capitol building in Des Moines.

Three witnesses testified for plaintiff and two for defendant. Many exhibits were offered and received. Witnesses called by plaintiff to establish the value of the property appropriated included Charles Kensinger, employed by the plaintiff as a district real estate representative and experienced in his field, and Murray Work, an independent, experienced and qualified real estate broker and appraiser.

All of the witnesses for plaintiff and defendant who testified as to the value of the property used the same three methods to arrive at their opinion as to value. One method is called cost approach, one is the income approach and the other the market or comparable approach to value. The witnesses did not give the same weight to each approach, but all considered comparable sales. In connection with the testimony the exhibits consisting of photographic but certified copies of deeds of record in Polk County were offered and received.

One property referred to by Mr. Kensinger and Mr. Work and used as a comparable was sold and conveyed by warranty deed by Texaco Inc. to the State of Iowa. It was formerly used as a Texaco service station. It is described as lots 15 and 16 in block 23 (except for a small triangular exception) in Stewart's addition in Des Moines and is located on the southwest corner of East 14th Street and Grand Avenue. This property is identified as a part of the property appropriated by the State and the description in the deed of conveyance is within the authorization of chapter 482, referred to supra, which in Division I of section 1 refers to lots 1 through 28, inclusive, block 23, Stewart's Addition. The description of the property appears in the deed offered and received in evidence as plaintiff's exhibit 10. There was testimony as to the area and the price per square foot.

Other properties referred to in the testimony and described in the exhibits cover property not within the perimeter of the Capitol Extension Grounds referred to in the joint resolution of the legislature. Several are near by, one being on the northwest corner of Des Moines Street and East 14th Street purchased by Continental Oil Company and one being on the northeast corner of Grand Avenue and East 14th Street across the street from the property described in the preceding paragraph. This property was purchased by Texaco Inc., the same company as the grantor in the deed to the State.

I.   Section 622.58 Code of Iowa provides:

"Proceedings of legislature. The proceedings of the legislature of this or any other state of the Union, or of the United States, or of any foreign government, are proved by the journals of those bodies, respectively, or of either branch thereof, and either by copies officially certified by the clerk of the house in which the proceeding was had, or by a copy purporting to have been printed by its order."

▉ Appellee argues with vigor that there was no offer in evidence of any official proceedings and that there is no showing in the record that the sales offered as comparables were under threat of condemnation. We dispose of this matter first.

The property to be acquired for the project is described in the joint resolution of the legislature referred to supra. Although we find no direct Iowa authority on the question we conclude that we should take judicial notice of a joint resolution. The resolution was published as a part of the official acts of the legislature. It was the authority under which the executive council acted.

▉ Judicial notice is taken of departmental rules and regulations adopted pursuant to statutory authority. State ex rel. Bierring v. Swearingen, 237 Iowa 1031, 1041, 22 N.W.2d 809, (special concurring opinion in which a majority of the court joined); Kraetsch v. Stull, 238 Iowa 944, 952, 29 N.W.2d 341.

■■ Joint resolutions of the legislature under which the executive council acts are in the same category and are subject to judicial notice by this court. We adopt the rule found in 29 Am.Jur.2d, Evidence, § 29, page 65: "Upon the theory that legislative journals are public records, since they are printed in pamphlet form and published and distributed, it has been held that the courts may take judicial notice of legislative proceedings as recorded therein to the same extent that they take judicial notice of statutes of the legislative body." See also, State ex rel. Kornmann v. Larson, 81 S.D. 540, 138 N.W.2d 1, 5; Medlock v. Schmidt, 29 Wis.2d 114, 138 N.W.2d 248, 252; City of Grand Island v. Ehlers, 180 Neb. 331, 142 N.W.2d 770, 775; Cf. Severs v. Abramson, 255 Iowa 979, 124 N.W.2d 150.

■■ II. The first error assigned by defendant relates to admission of evidence of the amount paid by the State to Texaco Inc. for property within the improvement area. Since our decision in Redfield v. Iowa State Highway Commission, 251 Iowa 332, 99 N.W.2d 413, 85 A.L.R.2d 96, evidence of the sale price of similar properties has been admissible as substantive evidence of value. Iowa Development Company v. Iowa State Highway Comm., 252 Iowa 978, 108 N.W.2d 487. But a sale to be considered as a comparable must be between a willing buyer and seller. A sale to a condemnor by a condemnee is not a comparable.

In Jones v. Iowa State Hgwy Comm., 259 Iowa 616, 619, 144 N.W.2d 277, we said: "The first error urged by defendant is that evidence of the amount paid by the condemnor to other condemnees in the same project is inadmissible. We have uniformly so held. [Citations]. The reason such evidence is inadmissible and held to be unduly prejudicial is, even in light of Redfield v. Iowa State Highway Commission, 251 Iowa 332, 99 N.W.2d 413, 85 A.L.R.2d 96, holding the sale price of comparable property may be shown as substantive evidence of value, the sale is not a sale between a willing buyer and seller. The price paid in such instance is the result of a compromise between the condemnor who is forced to acquire the land to complete the project and the condemnee whose land is going to be taken in any event. Neither party is free."

■ The evidence was not so insignificant as to be presumed to be without prejudice. We do not know what weight the jury gave to this testimony but evidence of what the condemnor was willing to pay and did pay on a square foot basis for similar property within the improvement area cannot be ignored as of no consequence or harmless. Admission of the evidence complained of constitutes reversible error.

III. Defendant assigns as error admission of evidence of the sale price of two other claimed comparables. Plaintiff offered and the court accepted, over defendant's objection, evidence of the amount paid by the Texaco company for the filling station site on the northeast corner of 14th and Grand and evidence of the amount paid by Continental Oil Company to acquire a filling station site on the northwest corner of East 14th and Des Moines Street. The sales occurred in early 1966 and 1967 respectively, which was after the extent of the contemplated improvement was made known by adoption of the Joint Resolution in 1965.

The rule relied upon by defendant is found in 5 Nichols on Eminent Domain, Third Ed., section 21.31(2), page 149 of the 1968 Supplement: "Where the sale price of a comparable reflects an important enhancement of value because of the building of the project which has prompted the taking, *the sale is not admissible*." (Emphasis added.)

This court held contra to the above rule in Ranck v. City of Cedar Rapids, (1907), 134 Iowa 563, 572, 111 N.W. 1027, 1031 and Snouffer v. Chicago & N. W. Ry. Co., (1898), 105 Iowa 681, 75 N.W. 501. Defendant recognizes these holdings but asks us to either distinguish or overrule them. Similar requests were made in two 1961 cases. Iowa Development Co. v. Iowa

State Hgwy. Comm., 252 Iowa 978, 989, 108 N.W.2d 487; Redfield v. Iowa State Hgwy. Comm. (second appeal), 252 Iowa 1256, 1260–1261, 110 N.W.2d 397. In both cases we declined to review the matter because the record was considered inadequate.[1] With the opinions in those cases before it defendant made an adequate record in this case. We believe the rule involved should now be reexamined.

The Iowa Development Company case and the Redfield case (second appeal), followed shortly after our opinion in Redfield v. Iowa State Hgwy. Comm., (first appeal), 251 Iowa 332, 99 N.W.2d 413, 85 A.L.R.2d 96. The first Redfield opinion substantially changed the Iowa law governing admissibility of evidence of the prices paid for sales of comparable properties. Such evidence had, until that time, been barred as direct substantive evidence relating to the value of the property under condemnation. We abandoned what is known as the Pennsylvania rule (prohibiting such evidence) in favor of the Massachusetts rule (allowing such evidence). This action made the specific problem with which we are now concerned more acute. When direct evidence of transactions involving sale of comparable properties is admissible, the question of what qualifies as a comparable property assumes more importance. The State, in Iowa Development Company and the second Redfield case, took the position that where sales of otherwise comparable property were made after the location of the condemnor's improvements became known, and where this knowledge served to enhance (or diminish) the price at which the claimed comparable was sold, the evidence of such sales should be barred. "They would not then be comparable because a factor entered into such sales which could not be considered in determining the value of the tract taken." (loc. cit., 252 Iowa at p. 1260, loc. cit. 110 N.W.2d at p. 400).

In addition to the change in the rule concerning admissibility of comparables effectuated by the first Redfield case, we note the Ranck and Snouffer cases, supra, did not consider the relationship of Article I, section 18 of the Iowa Constitution: "Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof, as soon as the damages shall be assessed by a jury, who shall not take into consideration any advantages that may result to said owner on account of the improvement for which it is taken."

In Redfield v. Iowa State Hgwy. Comm., (second appeal), 252 Iowa 1256, 1261, 110 N.W.2d 397, 400, we said: " * * * The question of the application of the language of the constitution was not discussed and apparently not considered in the Ranck, Snouffer, and Iowa Development cases. What the result would have been if it had been presented to the court we do not know. * * * "

As we understand defendant's position, the State does not argue that the rule allowing such evidence as a comparable is unconstitutional, but it claims the existence of the quoted constitutional section should be considered. This position is supported in 5 Nicholson Eminent Domain, section 21.3(1), pp. 435–36: "It has been objected that comparable sales which reflect an enhanced value brought about by the making of the improvement should not be admissible. It has been held that if evidence of enhancement in value of the primary tract, the one being condemned, by the making of the improvement was admissible, then the fact that the sales of otherwise comparable tracts were enhanced in amount by the same improvement would not preclude the right to have them considered by the jury. On the other hand, *if evidence of enhancement in value of the primary tract was not admissible, enhancement in value of other tracts by the improvement would make evi-*

---

[1]. "The question is intriguing; but for reasons set forth above we do not consider it. The record does not make it available to defendant." (loc. cit. 252 Iowa 1261, loc. cit. 110 N.W.2d 400).

*dence of sales of such other tracts inadmissible.* They would not then be comparable because a factor entered into such sales which could not be considered in determining the value of the tract taken." (Emphasis added).

27 Am.Jur.2d, section 430, page 337, has a similar import: " * * * Consequently, where land adjacent to a public improvement such as a park, has been enhanced in value by the contemplated improvement, evidence of the sales price of such land is not relevant to show the value of the land taken for the park, since the land embraced in the improvement is not similarly affected."

The constitutional consideration stems only from the phrase, a jury "shall not take into consideration any advantage that may result to said owner on account of the improvement for which it is taken." The State does not now claim the rule adhered to by the trial court is unconstitutional; only that it is unreasonable in light of the converse constitutional prohibition.

South Dakota considered the problem as it pertains to highway condemnations in State Hgwy. Comm. v. Lacey, 79 S.D. 451, 113 N.W.2d 50, 51. The evidence clearly showed the highway project itself increased the value of the claimed comparable from $15,000 to $21,000 after the location of the highway became known. "He (purchaser) further testified he would not have been interested in the property except for the interstate highway and he paid quite a premium for that reason. Photographs showed, and it was conceded, most of defendant's land was lower and flooded by the river; as stated it had no public road access to the proposed interstate; the house on it was stipulated as being worth $980. Where the sale price reflects an important enhancement of value because of the building of the interstate highway, the sale is clearly not admissible. The Supreme Court of Massachusetts, for which the rule of admissibility is identified has recently so held. Cole v. Boston Edison Co., 338 Mass. 661, 157 N.E.2d 209. Accord: City of Chicago v. Blanton, 15 Ill.2d 198, 154 N.E.2d 242. Cf. Hance v. State Roads Commission of Maryland, 221 Md. 164, 156 A.2d 644. * * * "

See also, Commonwealth Dept. of Highways v. Blackburn, Ky., 364 S.W.2d 332; Latham Holding Co. v. State, 16 N.Y.2d 41, 261 N.Y.S.2d 880, 209 N.E.2d 542; State Hgwy. Comm. v. Lacey, 79 S.D. 451, 113 N.W.2d 50; State Hgwy Dept. v. Parker, 114 Ga.App. 270, 150 S.E.2d 875.

IV. The second Redfield case places the burden on the objector to show an otherwise comparable sale is not comparable because the price has been affected by the projected project. This burden is in connection with the preliminary question of whether the evidence is admissible; a matter for the court. We adhere to this rule and examine the record in light of this burden.

The State objects to evidence of the sale of the northeast corner of East 14th and Grand Avenue. This property is directly across the street from the east terminus of the Statehouse improvement property. The State had already acquired the one filling station on the west side of this corner and as projected would acquire the other west side corner.

We do not extend this opinion by a detailed analysis of the testimony. Suffice to say both of condemnee's witnesses admitted, albeit reluctantly, that the value of the property was enhanced. The transaction offered as a comparable involved an extraordinarily high price that could not be explained in any other way except enhancement of value due to the project itself. The Texaco purchase was made at $7.45 per square foot. The next closest comparable offered was the Texaco sale to the State at $5.11 per square foot (this sale was not a true comparable as it was purchased by the State for the improvement, see Division II). The other comparables used were sold for $4.00, $3.00 and $2.88 per square foot respectively. This disparity in the Texaco

purchase was the subject of the following comments by condemnee's two appraisers.

MR. KENSINGER: "The price Texaco paid was a figure that they negotiated and arrived at. I don't know why they paid that much for the land. In my opinion, the price is on the high side of the market but I can't say they did wrong, I don't know. I cannot name any land sales approaching that figure in the City of Des Moines. In all fairness I would say that it was an extraordinary high price for land for a service station in this community. I will admit it is a little to the high side."

MR. WORK: "* * * However, I think there is one critical thing which has been mentioned before, and that is that Texaco who was being taken out by the State on one corner, paid a handsome amount for a piece of property to stay in the neighborhood as I already indicated in my opinion that it was a high price. * *"

On the same subject condemnor's appraiser Mr. Cochran said: "I considered the property that Texaco purchased on the northeast corner of East 14th and Grand but I felt that since the Capitol Expansion Program enhanced the value of the surrounding properties, they probably paid more for it than they would normally pay because in order to get a monopoly on that corner, this would be the only one there with a filling station which they would pay for."

Mr. Winegar testified for the State: "* * * I did not use the northeast corner of East 14th and Grand, which Texaco purchased as a comparable, but I am familiar with the property.

"In my opinion, it is not a comparable to the subject property. First of all, it will be the only site left on this corner which will be available to a service station when the State House expansion area is completed. They took out the Texaco station on the southwest corner and they are going to take out the Shell station on the northwest corner. There is a small city park on the southeast corner, so we have left one site on that corner which is the northeast corner, of East 14th and Grand. I did not feel that it should be in any way considered comparable to this property."

■ The State carefully followed the second Redfield case in making a record for consideration by this court. Admission of evidence pertaining to sale of the property at East 14th and Grand constitutes reversible error.

■ The record in connection with the property sold at East 14th and Des Moines Street fails to show such an enhancement of value as to make the evidence inadmissible. Since this matter must be retried and a new record made we need pursue the subject no further.

■ We hold that where the sales price of a claimed comparable reflects a significant enhancement (or diminution) of value because of the building of the project itself, evidence of such sale is not admissible as a comparable. To the extent that Ranck v. City of Cedar Rapids, 134 Iowa 563, 111 N.W. 1027, and Snouffer v. Chicago & N. W. Ry. Co., 105 Iowa 681, 75 N.W. 501, are inconsistent with this opinion they are overruled.

Problems dealing with anticipatory enhancement or diminution of value before the project is specifically located are not before us and we do not pass on them. Cf. 27 Am.Jur.2d, Eminent Domain, section 283, page 79, et seq.

V. By reason of what has been said in Divisions II, III and IV, defendant's complaints as to the court's failure to instruct on the matters considered herein are moot.

Reversed and remanded for retrial.

MOORE, STUART, MASON and RAWLINGS, JJ., concur.

SNELL, J., GARFIELD, C. J., and LARSON and LeGRAND, JJ., dissent.

SNELL, Justice (dissenting in part).

I concur in Divisions I and II of the majority opinion and in reversal and remand. The amount paid by the condemnor to another condemnee in the same project does not represent a sale between a willing buyer and seller. Evidence thereof is not admissible. The fact that the amount paid does not reflect a voluntary sale draws a sharp line against admissibility. Such a line is easy to distinguish and easy to follow. It provides the line of demarcation between the court's duty to determine admissibility and the jury's duty to determine weight.

The holding in Division III of the majority opinion breaches the line and in my opinion goes too far. It proceeds from an entirely different premise. It places on the trial court the duty of weighing the evidence.

It is, of course, true that a trial judge always has the duty of determining relevancy and materiality of offered evidence. The value of a corner lot in the business district of Des Moines would in no way be relevant to the value of a corner lot in a small town. In the case at bar, however, the property that now may not be considered at all as a matter of law is on the opposite side of the same street and within a few blocks of the condemned property. It is used for the same purpose but outside the perimeter of the improvement project. It was sold by a willing seller to a willing buyer at private sale.

Public and even private improvements almost inevitably have some impact upon the desirability and value of nearby property. The impact may be good or bad, great or small. It is a question of degree and in my opinion a question for the jury.

The majority opinion specifically overrules Ranck v. City of Cedar Rapids, 134 Iowa 563, 111 N.W. 1027 and Snouffer v. Chicago and North-Western Railway Company, 105 Iowa 681, 75 N.W. 501. The Ranck case is a thorough analysis of the problems involved in determining values in condemnation. I think what is said therein is still sound.

It should be kept in mind that the Ranck case considered and we are not considering admissibility and not weight or probative value of evidence. In Ranck, loc. cit. 568, loc. cit. 111 N.W. 1029, this appears: "The cases * * * serve well to illustrate the marked tendency of the courts to liberality in the admission of proof of any and all facts having any legitimate tendency to aid the jury in arriving at the value of the property appropriated under power of eminent domain. * * * The owner * * * is entitled to display all the attractive and desirable features of such property which may tend to enhance its value in the market, and thus secure the highest obtainable compensation therefor." I see nothing wrong with such reasoning.

On page 572, 111 N.W. on page 1031 in discussing the exact point now before us the court said:

"A witness on the part of the appellee was permitted to testify that the fact that a bridge was to be constructed across the river had the effect to increase the market value of real estate generally in the neighborhood embracing the property in question, and upon this ruling error is assigned. * * * we are disposed to hold the evidence admissible." (loc. cit. 572 of 134 Iowa, loc. cit. 1031 of 111 N.W.)

There was similar testimony in the case before us.

There is no question as to the admissibility of such evidence. The question is how far such evidence should go in barring reference to comparable sales.

I have no quarrel with the general statements cited and quoted by the majority from Nichols on Eminent Domain, 27 Am. Jur.2d and the Lacey case from South

Dakota until those statements are viewed with sufficient elasticity to categorically bar evidence such as we have here. Those authorities proceed from the premises that "an *important enhancement of value because of the building of the project*" appears without question. (Emphasis added)

In the South Dakota case enhancement so appeared without dispute. The purchaser of the claimed comparable (he was a witness for condemnor) testified he would not have been interested in the property except for the interstate highway and he paid quite a premium "for that reason." His interest in the area was generated by the proposed improvement.

We have no such situation here. Texaco Company had been in the area with a filling station. It was a good location on a busy intersection of main streets. The state appropriated the property. Texaco went cater-corner across the intersection and bought the property offered in this case as a comparable. It was a negotiated sale.

There was testimony, quoted by the majority, that the price paid by Texaco was high. The reasons therefor were fully explored and explained. The probative weight of the evidence of value was challenged and undoubtedly reduced by the explanations, but there was nothing misleading or confusing to the jury in its admission. The Texaco people lost their location. Apparently they wanted to stay on the same corner. To stay in business they paid what was necessary for a comparable location for a filling station. Appellees also lost a location on a good corner on the same street a few blocks away. For purposes of comparison of location values we should not say that it is reversible to let the jury hear the facts.

The witnesses speculated that Texaco paid a high price to get a monopoly. If such was the fact the enhanced value was an indirect rather than direct result of the Capitol Grounds Extension project. The evidence does not show that a filling station location on East Fourteenth and Grand was any better after the project was announced than it was before.

The enhancement, if there was such, was because of a hoped for but in no way guaranteed monopoly.

In my opinion these are all questions of degree and go to the weight and not the admissibility of the evidence.

Where the situation is as clear as in the South Dakota case the evidence of a claimed comparable would not be relevant but where as here the facts are fully explored admissibility should be within the court's discretion and the weight left to the judgment of the jury.

We have repeatedly and consistently held that much must be left to the sound discretion of the trial court in determining whether other properties and conditions surrounding sale thereof are sufficiently similar so evidence of such sales is admissible. Iowa Development Company v. Iowa State Highway Commission, 252 Iowa 978, 986, 108 N.W.2d 487; Linge v. Iowa State Highway Commission, 260 Iowa 1226, 1240, 150 N.W. 2d 642 and Crozier v. Iowa-Illinois Gas and Electric Company, Iowa, 165 N.W.2d 833, 834, 835.

In Crozier there were similarities and differences. We said:

"We do not believe the trial court abused his discretion in allowing the sales prices of these farms into evidence. These tracts of land were sufficiently similar in size, use, location and character to the Crozier farm to make their sales prices substantive evidence of the value of the Crozier farm. It is true neither farm had a wilderness hog farrowing operation. *This difference in the operation of the farms is a distinction which was properly pointed out by plaintiffs.* However, this difference in operation goes to the weight and credibility of the sales as comparable rather than to their admissibility." (Emphasis added)

In Belle v. Iowa State Highway Commission, 256 Iowa 43, 126 N.W.2d 311, we said:

"There were situation differences including loss of access and the building of a new road through the middle of plaintiffs' property so the per acre value of comparable land was of lessened probative value in determining the measure of damage. There was enough similarity in the properties, however, so that the admission of the evidence was within the discretion of the court. * * *

"The admissibility of the evidence is for the court. The extent of the comparability and the weight and credit to be given the evidence is then for the jury. * * *" (loc. cit. 47 and 48, loc. cit. 314 of 126 N.W.2d)

The same rule should apply here.

It would be very difficult to find sales of property exactly comparable in every respect. If and when there are some differences or difference of opinion as to comparability I think it would be proper for the court to instruct the jury to consider the evidence only to the extent of comparability.

The extent to which a sale price, because of the improvement, does not reflect comparability should be disregarded by the jury. This is in line with the provisions of Article I, Section 18, Constitution of Iowa quoted by the majority.

This constitutional provision has been recognized by our courts since its adoption in 1857 and has been referred to in reported cases for over 100 years. Benefits are not offset against damages. See Deaton v. County of Polk, 9 Iowa 594. This has created no great problem. Trial courts have instructed juries that benefits should not be considered. Brooks v. Davenport & St. Paul Railroad Company, 37 Iowa 99, Stoner v. Iowa State Highway Commission, 227 Iowa 115, 126, 287 N.W. 269.

This constitutional provision is a benefit to a condemnee. It prevents a reduction of his award by offsetting benefits. If the provision is adequately applied in computing damages to condemnees by a simple instruction the same provision might well be applied to comparables since adoption of the rule in the first Redfield opinion discussed by the majority.

That juries are perfectly competent to consider the weight to be given various matters of evidence is illustrated by the figures quoted by the majority in Division IV.

The sale to Texaco was at $7.45 per square foot. The sale by Texaco to the State (not a true comparable) was at $5.11 per square foot. The other comparables were sold for $4.00, $3.00 and $2.88 per square foot respectively.

In referring to the sale to Texaco plaintiff's independent appraiser used it for comparison but did not claim the subject property was worth as much. He said, "I felt well maybe it is worth half of it at the least." This did not include the value of improvements.

The jury award to plaintiff was a fraction of a cent over $3.00 per square foot. If there was any prejudice to the condemnor it does not appear from these figures.

The holding of the majority creates difficult problems for a trial judge. The question should be one of weight and not admissibility. To determine weight and credit of testimony we have juries.

I think the overruling of Ranck and cases following the rule therein stated is an unnecessary restriction on our present and enlightened use of comparable sales as evidence of value.

GARFIELD, C. J., and LARSON and LeGRAND, JJ., join in this dissent.